**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers, AFL-CIO, | |
| Plaintiff, | |
| v. | Case No. 23-2250 |
| J. Tom Baca (Officer Capacity), et al., | |
| Defendants. | |

**<u>Brief Supporting Plaintiff's Ex Parte Temporary Restraining Order and Motion for Preliminary Injunction</u>**

Due process is a fundamental concept in American law. A key feature of due process is that an organization must follow its own rules when handling disputes. Defendant J. Tom Baca, Arnie Stadnick, and Timothy Simmons are circumventing Plaintiff International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers, AFL-CIO's ("IBB") procedures governing how it investigates violations of its governing rules. Further, Defendants have taken the unprecedented step of misappropriating authority under the IBB's Constitution and utilizing that misappropriated authority to remove the duly elected International President and strip him of his membership in the IBB through extra-constitutional means. Thus, the IBB asks the Court to grant its Motion for Preliminary Injunction.

## I.      Background

The IBB first describes itself and its leadership structure. Next, it explains how it processes internal disciplinary charges. Finally, it discusses the events that lead to this motion.

### A.      IBB and its Leadership Organization

The IBB is a labor organization headquartered in Kansas City, Kansas that represents employees across the United States and Canada. Doc. 1-1. As required by law, the IBB is governed by the Constitution of the International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers, AFL-CIO as revised and adopted at the 34th Consolidated Convention held July 21, 2021 ("Boilermakers Constitution"). *See* Doc. 1-3. The Boilermakers Constitution provides seven officer positions. Art. 4.1.[1] These positions are elected at the IBB's International Convention, which is held every five years.

The International President, Newton B. Jones, is the principal executive officer and enforces all governing rules. Art. 7.1.1 lns. 1–3; Doc. 1-2. The International Vice Presidents ("IVPs") oversee the subordinate bodies in their regions. Art. 8.1, lns. 1–4. The current IVPs are Lawrence J. McManamon, John T. Fultz, and the three defendants in this case: J. Tom Baca, Arnie Stadnick, and Timothy Simmons. Doc. 1-2 ¶¶ 4–6, 8, 9. The International Secretary Treasurer, currently William T. Creeden, is a duly elected office charged with, in part, handling the IBB's income and expenses, and also creating and maintaining meeting records. Art. 9.1, lns. 1–6; Doc. 1-2.

The International President, along with the five IVPs comprise the International Executive Council. Art. 5.1. The International Executive Council governs certain aspects of the

---

[1] Citations to the Boilermakers Constitution are made to the article and specific lines.

IBB. Art. 5.2, lns. 1–4. It meets at least semiannually or when called to a meeting by the International President. Art. 5.8, lns. 1–4.

### B.    Internal Disciplinary Process

The Boilermakers Constitution describes what offenses can lead to internal discipline and the process for handling such charges. *See generally* Doc. 1-3 at 56–62 (Boilermakers Constitution Art. 17). For simplicity, the IBB limits its discussion to the provisions necessary to understand this dispute.

Any member in good standing who knows about an alleged violation of the Boilermakers Constitution can file a charge. *Id.* at 58 (Art. 17.2.1, lns. 1–3). Generally, the charging member must file the charges within 60 days after the alleged violation happened. *Id.* lns. 1–4. But the charging member can raise older violations if the basic facts or evidence of the violation could not be known during that time. *Id.*, lns. 5–7. The charging member must serve the accused party using registered or certified mail and provide sufficient information to inform the accused party of what he is being charged. *Id.*, lns. 13–16.

Once charges are properly filed, charges can take various potential routes. Notably here, the Boilermakers Constitution allows the International President to hold the charges in abeyance for a reasonable period of time. *Id.* at 59 (Art. 17.2.3, lns. 56–58). The International Executive Council has exclusive jurisdiction to hear charges against International Officers. Art. 17.3.2, lns. 17–19. However, any member of the International Executive Council who cannot function in an impartial manner cannot participate in the proceedings. *Id.*, lns. 19–22.

### C.    Events Leading to this Motion

#### 1.    Charges Filed and Initial Steps

On April 14, 2023, IVP Fultz filed charges against International President Jones alleging that International President Jones had mishandled, misappropriated, or otherwise misused union funds or properties. Doc. 1-4. The charges allege that (1) International President Jones directed backpay in 2015 to his wife, Kate Jones, while she was living in Ukraine, (2) he expended union funds to pay for meals while at home, and (3) he used union funds to travel to his residence in Ukraine. The charges provided no dates for the last two alleged violations.

On May 3,[2] International President Jones appointed an "Article 17 Committee" to handle the charges against him. Doc. 1-5. He empowered the Article 17 Committee to exercise any power given to the International President with respect to handling charges under Article 17, as allowed under the Boilermakers Constitution. This Article 17 Committee consists of IST Creeden and IVP McManamon. On May 6 at 5:55 PM Central, IST Creeden emailed the International Executive Committee that he and IVP McManamon had been appointed to oversee the charges. Doc. 1-6. He continued that IVP McManamon would address the charges.

Just over two hours later, on May 6, IVP Simmons emailed the International Executive Council, purportedly on behalf of the International Executive Council. Doc. 1-8. His email said that a meeting would happen on May 12 to consider how to handle the charges against International President Jones. It continued, "Any action taken by the International President with respect to the charges against him are null and void since the [International] Executive Council has exclusive authority under Article 17.3.2." International President Jones never called this meeting, nor does anyone allege he did as evidenced by the May 6 email from Defendant IVP Simmons. As noted above, Boilermakers Constitution only allows the International President to call a meeting of the Executive Council. *See* Art. 5.8, lns. 1–4.

---

[2] All remaining dates happened in 2023 unless otherwise indicated.

### 2.  Competing Proceedings

This email caused one authorized set of proceedings (the Article 17 Committee) and one unauthorized set of proceedings (the Three Defendant IVPs) to happen. As can be seen below, these competing proceedings have created substantial confusion.

### i.   The Article 17 Committee's Investigation

On May 10, the Article 17 Committee wrote IVP Fultz acknowledging that it received the charges. Doc. 1-7. It continued that it was holding the charge in abeyance while it investigated the allegations. The next day, IST Creeden wrote to IVP Fultz informing him that he could review IBB documents at its headquarters in Kansas City, Kansas. Doc. 1-12. On May 16, the Article 17 Committee advised IVP Fultz that it was proceeding with its investigation. Doc. 1-13.

On May 18, the Article 17 Committee wrote IVP Fultz again about its letter from May 11. It also asked for IVP Fultz to (1) state the exact date when the alleged violations occurred, (2) describe briefly what, he alleges, violations occurred, (3) name of each member of the International Executive Council who was serving when the alleged violations happened and (4) cite the particular Boilermakers Constitution subsection that was violated by each alleged violation. The Article 17 Committee asked for this information within two weeks of this letter.

### ii.  Defendants' Unauthorized Proceedings

All five IVPs attended the conference call on May 12. Doc. 1-9 at 3. IVP McManamon asserted that the call was not an official meeting of the International Executive Council at the beginning of the call, which the other IVPs rejected. IVPs Simmons, Baca, and Stadnick—*i.e.*, the defendants in this case—voted to disqualify International President Jones from performing any role assigned to the International President with respect to the charges filed against him by IVP Fultz. The Three Defendant IVPs then voted to assign Robert Lunsford, an officer for

Boilermakers District 57 based in Chattanooga, Tennessee, to perform the duties of the

International President with respect to the charges. IVP Fultz recused himself from the votes.

IVP McManamon did not vote because it was not an Executive Council meeting.

On May 16, Mr. Lunsford advised he was scheduling the informal hearing for May 30,

beginning at 8:00 a.m. Central at the Hilton Garden Inn Kansas City Airport. Mr. Lunsford

added that the formal hearing would begin at 1:00 p.m. Central if the parties could not resolve

the matter. Doc. 1-10. On May 19, Mr. Lunsford emailed the International Executive Council

that he had assigned Joseph Maloney, a former IVP, as the hearing officer for the May 30

hearing. Doc. 1-11. The IBB believes that Mr. Lunsford, Mr. Maloney, the Three Defendant

IVPs, and Mr. Fultz attended the unauthorized hearing. This suit was filed that night. *See* Doc. 1.

### D.    Post Litigation Events

This morning, June 2, the Three Defendant IVPs issued an alleged "Decision of

Executive Council." This document purported to decide the charges against International

President Jones, finding that he was guilty of all three alleged violations. Ex. 16. For this alleged

conduct, the alleged "Decision of Executive Council" asserted that International President Jones

should be removed from office, stripped of his membership, and barred from serving in any

capacity including running for office. Ex. 16. The "Decision" says that IBB officers and staff

should assist in implementing the alleged decision.

### II.    Discussion

"A district court may hold ex parte proceedings when a party requests a TRO."

*ClearOne Commc'ns, Inc. v. Bowers*, 509 F. App'x 798, 802 (10th Cir. 2013). For an ex parte

TRO, the movant must satisfy two prerequisites under Fed. R. Civ. P. 65(b)(1). First, the movant

must show "specific facts in an affidavit or a verified complaint clearly show that immediate and

irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A). Second, "the movant's attorney [must] certif[y] in writing any efforts made to give notice and the reasons why it should not be required." *Id.* 65(b)(1)(B).

The standard for obtaining a temporary restraining order is the same as the standard for obtaining a preliminary injunction. *Rangel-Lopez v. Cox*, 344 F. Supp. 3d 1285, 1289 (D. Kan. 2018). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Defense Council, Inc.*, 555 U.S. 7, 20 (2008). Also, the court must determine whether it will require the movant to post security if it grants the injunction. Fed. R. Civ. P. 65(c).

The IBB seeks to temporarily restrain the Three Defendant IVPs from disrupting the status quo—*i.e.*, before the Three Defendant IVPs issued their unauthorized decision after an unauthorized hearing. Specifically, the Court should enjoin the Three IVPs from (1) undermining or subverting the Article 17 Committee's process, (2) taking any further any with regards to the purported May 30 "hearing," (3) attempting to call impermissible Executive Council meetings, and (4)—most pertinently—enjoining the June 2, 2023 decision.

The IBB first explains why it has met the prerequisites for securing a temporary restraining order. It then discusses why it is likely to prevail on the merits and why the four factors favor entering this injunction. It ends by discussing why the Court should not require it to post security.

A.    **The IBB has met the prerequisites for obtaining an *ex parte* temporary restraining order.**

To establish irreparable harm, "a plaintiff must demonstrate a significant risk that [it] will experience harm that cannot be compensated after the fact by money damages." *Fish v. Kobach*, 840 F.3d 710, 751–52 (10th Cir. 2016). This harm must be significantly "likely to occur before the district court rules on the merits," *Greater Yellowstone Coal. v. Flowers*, 321 F.3d 1250, 1260 (10th Cir. 2003). Here, the Three Defendant IVPs have started a rogue hearing and decision that is not authorized by the Boilermakers Constitution, and they have been advised and warned of the same. They have further propagated this unauthorized hearing by writing up and issuing an alleged decision, which purports to strip International President Jones of his office and his membership.

Thus, if they are allowed to go forward with their plan, the IBB will be thrown into extreme confusion about who is properly in charge. Further, allowing them to continue down this path could create conflicting rulings, which would throw the IBB into organizational chaos. Finally, as will be explained below, their actions could create the basis for a lawsuit by International President Jones against the IBB. In short, the Three Defendant IVPs' actions (and likely future ones) could cripple the IBB's operation and create legally actionable conduct when it could be prevented.

The IBB has not had time to notify the Three Defendant IVPs of this motion because they have issued this "Decision." If the IBB waits, its membership, officers, and employees will be understandably confused about who is in charge. Putting a pause on the Three Defendant IVPs' conduct will prevent that confusion and organizational chaos from spreading. *See Nat'l Elec. Contractors Ass'n, Inc. v. Kan. Chapter, Nat'l Elec. Contractors Ass'n, Inc.*, 46 F. Supp. 2d 1174, 1186 (D. Kan. 1999).

B.      **The IBB is likely to prevail on the merits.**

As noted in the Complaint, two laws support the IBB's requested relief: the Labor

Management Relations Act ("LMRA") and the Labor Management Reporting and Disclosure

Act ("LMRDA"). While the IBB believes that it will likely prevail under either theory, finding

that the IBB is likely to prevail under either law will satisfy this prong of the preliminary

injunction analysis. Below, the IBB explains why it will likely succeed under either theory.

1.   **The IBB will likely prevail under the LMRA because Three Defendant IVPs have and continue to violate the Boilermakers Constitution.**

The LMRA authorizes suits for violations of an international union's constitution.

*Plumbers & Pipefitters v. Plumbers & Pipefitters, Local 334*, 452 U.S. 615 (1981). The Three

Defendant IVPs as officers can be sued under LMRA § 301 as part of an equitable action. *See,*

*e.g., Int'l Union of Elec., Elec., Salaried, Mach. & Furniture Workers, AFL-CIO v. Statham*, 97

F.3d 1416, 1421–22 (11th Cir. 1996) (holding that an action under LMRA § 301 can be brought

by international unions against individual officers for alleged violations of the international

union's constitution).

As more fully set forth in the Complaint, the Three Defendant IVPs have violated the

Boilermakers Constitution by implementing a disciplinary process that the Boilermakers

Constitution does not allow. The process was specifically set by the May 3 letter, establishing the

Article 17 Committee. The Article 17 Committee thereafter held the charges in abeyance and

sent multiple letters in aid of their investigation. All of this is permitted and proper under the

plain language of the Boilermakers' Constitution, most notably, Articles 5.2, 7.1.1., and 17.

In lawsuits of this nature, union interpretation of the governing documents, such as the

union constitution, is critical. There is a strong federal policy in favor of union self-governance.

*James v. Int'l Broth. of Locomotive Engineers*, 302 F.3d 1139, 1145 (10th Cir. 2002). As a result,

it is often the case that interpretation of a union constitution by union officials will not be disturbed by the courts, absent bad faith or special circumstances. *Id.; see also Allen v. United Transp. Union*, 964 F.2d 818, 821 (8th Cir. 1992) ("Absent bad faith, we will defer to the union's interpretation of its own constitution, provided that interpretation is reasonable and not contrary to the constitution's express language.").

Here, consistent with the language of the Boilermakers Constitution, the Charges were assigned to a committee to address all manners as to the charges.[3]  To the extent there is any question of interpretation, Article 7.2 is the interpretation clause of the Boilermakers Constitution, and it is controlling. It provides interpretation authority to the International President (and here, to the Article 17 Committee), subject to appeal, and no such appeal has been levied.

Despite the clear direction of the course of the charges (i.e., Article 17 Committee), the Defendants have conducted meetings, set hearings, and now issued an unauthorized and drastic decision. The decision seeks to upend the will of the delegates of the Convention in electing their International President by the Constitutionally violative actions of a few.

The Three Defendant IVPs presumably will "hang their hat" on the language in Article 17 that says that the International Executive Council has exclusive jurisdiction to hear charges involving International Officers. Yet, no interpretation has been offered on this language. Even more so, the number of clear and applicable Constitutional provisions is overwhelmingly in favor of the Article 17 Committee. This includes Article 5.2, Article 5.8, Article 7.1.1, and other provisions in Article 17. Nothing in Article 17 permits for the Defendants to (1) call Executive

---

[3] Indeed, in *Allen*, the Eighth Circuit recognized that an international union president had the constitutional power to give authority to two international vice presidents, and that determination was not disturbed.

Council meetings,[4] (2) refer to the International President's actions as "null and void," (3) disqualify the International President for his authority throughout the Constitution, (4) appoint someone to serve in the International President's role, (5) set an unauthorized "hearing" and (6) issue an alleged "decision" with essentially no advanced notice.[5]

Thus, the IBB will likely show that the Three Defendant IVPs have and continue to violate the Boilermakers Constitution. Again, the May 3 letter established the course by which these Charges would proceed (all supported by Constitutional language), various letters followed from the Article 17 Committee, and yet, the Three Defendant IVPs decided to pursue their own unauthorized cause anyway. The Three Defendant IVPs do not have the authority to read language into the Constitution which is not there. To the extent there was a question of interpretation, the Three Defendant IVPs failed to raise those questions properly. Accordingly, the overwhelming authority on union governance suggests deference to the Article 17 Committee and its completion of the investigation. Further, the IBB Constitution requires a majority of the International Executive Council is required to have constitute a quorum. As such, the three Defendant IVP's have acted and continue to act without a quorum in violation of the IBB Constitution. **Sec. 5.8.**

> 2. **The IBB's actions have been consistent with ensuring compliance with the LMRDA.**

LMRDA § 101(a)(5) provides "Safeguards Against Improper Disciplinary Action" requiring "[n]o member of any labor organization may be fined, suspended, expelled, or

---

[4] Not only is there no constitutional authority for a single IVP calling for an Executive Council meeting, there is no legal right to call one either. The LMRDA "does not create a right to meetings at the expense of the union...." *Grant v. Chicago Truck Drivers, Helpers & Warehouse Workers Union*, 806 F.2d 114, 117 (7th Cir. 1986)

[5] "In interpreting a labor union's constitution, both the union and the court should follow the settled rules of statutory construction. One of these rules is that the constitution must, if possible, be construed in such fashion that every word has some operative effect." *Reich v. Int'l. All. of Theatrical Stage Employees & Moving Picture Mach. Operators of U.S. & Canada, AFL-CIO*, 32 F.3d 512, 515–16 (11th Cir. 1994).

otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing." 29 U.S.C. § 411(a)(5).

In *Sheet Metal Workers' Int'l Ass'n v. Lynn*, 488 U.S. 347 (1989), the U.S. Supreme Court spoke at-length about the seriousness of efforts to remove elected officers, stating:

> [W]hen an elected official like Lynn is removed from his post, the union members are denied the representative of their choice…. Furthermore, the potential chilling effect on Title I free speech rights is more pronounced when elected officials are discharged. Not only is the fired official likely to be chilled in the exercise of his own free speech rights, but so are the members who voted for him.

> *Id.* at 355 (citations omitted).

As noted in the Complaint, President Jones was elected in July 2021 to a five-year term by delegates representing over 45,000 members. Despite this, the Three Defendant IVPs seek to overturn such unchallenged and unanimous election through its unauthorized actions that are at issue in this matter.

Courts require disciplinary hearings to have three qualities to comply with the procedural due process requirements of LMRDA § 101(a)(5). First, charges which provide clear notice of particulars, such as times, places, and names. *See, e.g., Gleason v. Chain Serv. Rest.*, 300 F. Supp. 1241, 1252 (S.D.N.Y. 1969), *aff'd*, 422 F.2d 342 (2d Cir. 1970). Second, the accused party must be given a "reasonable time to prepare" in a meaningful fashion, which can include receiving sufficient information and postponement. *See, e.g., Kuebler v. Cleveland Lithographers and Photoengravers Union Loc. 24-P,* 473 F.2d 359 (6th Cir. 1973) (recognizing right to request and receive additional relevant information in advance of hearing); *Thompson v. Intl. Union of Elevator Constructors, Loc. No. 2,* 05C2442, 2007 WL 1521247 (N.D. Ill. May 22,

2007) (enjoining discipline where union proceeded with disciplinary proceedings without providing sufficient information to the members and the hearing officials refused to postpone the hearing) Third, the panel must be impartial. *See, e.g., Bishop v. Intl. Ass'n of Bridge, Structural, Ornamental and Reinforcing Iron Workers,* 310 F. Supp. 2d 33, 43 (D.D.C. 2004) (finding panel impartial where eight of the twelve jurors who heard the charges had previously signed a petition circulated demanding the charged member's removal).

The Article 17 Committee went to great lengths to attempt to prevent the Three Defendant IVPs from causing serious questions about this due process considerations. Specifically, the Article 17 Committee (1) made offers to the Charging Party to review documents, (2) directed the Charging Party to provide specific information and documentary evidence so that the unclear Charges could be understood, (3) advised the hearing was unauthorized and the investigation was ongoing, and (4) advised that the Three Defendant IVPs had seemingly prejudged the matter by their various actions and lacked impartiality, most notably, their persistent actions to seek to limit the constitutional authority of the International President (including earlier efforts in April 2023) and set a "hearing," all of which are not in accord with the Constitution.

Here, despite the efforts of the Article 17 Committee, the Three Defendant IVPs have assigned themselves to decide International President Jones's fate based on vague, incomplete charges, and made no effort to address the ongoing investigation of the Article 17 Committee. They have rushed these proceedings because of alleged financial improprieties—some of which are nearly 10 years old. These difficult and complex issues should be examined closely and carefully. Further, they have conducted conference calls where they purport to act as the International Executive Council even though proper procedures are not followed, as explained

above. These actions indicate that the Three Defendant IVPs have prejudged International President Jones's fate. The IBB has no desire to undergo a dispute of the application of the LMRDA as it relates to their actions. A more deliberative process can yield better, more defensible results.

Alternatively, other protections of the LMRDA are also implicated. Section 401(a) protects the right of the rank and file to "choose their own representatives" and Section 411(a)(1) extends to the right "to nominate candidates and to vote in elections ... of the labor organization ...."  Courts have noted that, where a penalty of removal from office and disqualification as a candidate is based upon proceedings not in accord with the union governing documents, the rights of the rank-and-file members can be violated. *See, e.g., Schonfeld v. Penza*, 360 F. Supp. 1228, 1233 (S.D.N.Y. 1972), *aff'd*, 477 F.2d 899 (2d Cir. 1973)

> **C.   The IBB will likely suffer irreparable harm without a preliminary injunction because the Three Defendant IVPs' actions threaten to cripple the IBB's operations and cause legal jeopardy for the IBB.**

The irreparable harm analysis is explained above, and the IBB will not repeat it here.

> **D.   The balance of equities favors entering a preliminary injunction because the Three Defendant IVPs will suffer little—if any—harm.**

"To succeed on a typical preliminary-injunction motion, the moving party needs to prove…that [its] threatened injury (without injunction) outweighs the opposing party's under the injunction…." *Mrs. Fields Franchising, LLC v. MFGPC*, 941 F.3d 1221, 1232 (10th Cir. 2019) (quotation cleaned up). Here, the Three Defendant IVPs face minimal—if any—harm if they are enjoined from further proceeding with their hearing. The IBB had initiated an investigation into the charges against International President Jones before they convened their extra-constitutional proceeding. Further, the charges involve no alleged financial transactions that are ongoing. The most recent allegation of misconduct cited dates back to 2019. Thus, the Three Defendant IVPs

14

have no interest in their expedited proceedings being fast-tracked. Instead, particularly given the stale nature of the allegations, the Three Defendant IVPs should want a thorough and deliberate investigation to determine what (if any) violations occurred.

        **E.**      **The public interest favors preliminarily enjoining the Three IVPs' rogue hearing.**

"The last preliminary injunction factor requires that the injunction not be against the public interest." *Free the Nipple-Fort Collins v. City of Fort Collins, Colo.*, 916 F.3d 792, 807 (10th Cir. 2019). As evidenced by the LMRDA's passage, the public has an interest in ensuring that unions operate according to their governing documents and that all members receive fair treatment. Thus, the public interest favors entering the preliminary injunction.

        **F.**      **The Court should not require the IBB to post a bond or other security when it issues the preliminary injunction.**

Courts often forgo requiring the moving party to post security if no other party will sustain damages because of the injunction. *See RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1215 (10th Cir. 2009). As explained above, the Three Defendant IVPs will sustain no harm if the Court restrains them from going forward with their proceedings. If the Court ultimately declines to enter a permanent injunction (which the IBB strongly believes will not happen), they can continue proceeding as if nothing happened.

**III.**    **Conclusion**

The Three Defendant IVPs are circumventing the due process protections of both the Boilermakers Constitution and federal law. Allowing them to do so could cause chaos within the IBB. The Court should stop them from doing so before it is too late. As such, the IBB respectfully asks the Court to grant its Motion for Preliminary Injunction.

Dated:  June 2, 2023

Respectfully submitted:

/s/ Michael E. Amash
Michael E. Amash
Blake & Uhlig, P.A.
6803 West 64th Street, Ste 300
Overland Park, KS 66202
Phone: (913) 321-8884
Fax: (913) 321-2396
Email: mea@blake-uhlig.com
ATTORNEYS FOR PLAINTIFF