**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers, AFL-CIO<br><br>        Plaintiff,<br><br>    v.<br><br>J. Tom Baca (Officer Capacity), et al.,<br><br>        Defendants. | Case No. 23-2250 |

**DEFENDANTS' OPPOSITION TO *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER AND MOTION FOR PRELIMINARY INJUNCTION**

## I. INTRODUCTION

Over several years, Newton B. Jones misappropriated hundreds of thousands of dollars from the International Brotherhood of Boilermakers ("IBB" or "Union"). While serving as the Union's highest-ranking officer, Jones paid his wife significant sums of money for work that she never performed. He spent thousands of dollars of the Union's money on flights to Ukraine, where the IBB has no members and conducts no business. And he used his Union expense account to pay for extravagant personal meals for him and his wife near their North Carolina home. In short, Jones betrayed the IBB's members for his own financial gain.

When Jones' unconscionable conduct was revealed, IBB International Vice Presidents ("IVPs") J. Tom Baca, Tim Simmons, Arnie Stadnick, and John T. Fultz risked retaliation by upholding their constitutional duties and implementing the Union's internal disciplinary process. Fultz charged Jones with violating the IBB Constitution, while Baca, Simmons, and Stadnick (the three Defendants), in their role as members of the Union's International Executive Council ("IEC"), served as the trial body at the subsequent hearing. In light of the uncontroverted evidence presented at the hearing, the IEC issued a final decision removing Jones from office.

Unfortunately, Jones will not vacate his position. He continues to waste even more of the membership's money and has dragged the Union into an unnecessary, costly legal battle.

Jones wrongly alleges that the disciplinary process was procedurally defective. His Labor Management Relations Act ("LMRA") and Labor Management Reporting and Disclosure Act ("LMRDA") claims are meritless. They simply seek to divert attention from his egregious misuse of Union funds. Moreover, even if Jones identified a technical defect in the disciplinary process, he cannot establish any threat of irreparable harm. As is evident from the fact that Jones is still in office, the IEC decision is not self-enforcing; there is *nothing* for the Court to do until Jones leaves office. Thus, his request for preliminary injunctive relief must fail.

## II.  FACTS

In February 2023, the members of the IEC, as well as IBB Secretary-Treasurer William Creeden, other Union officers, and various IBB staff members, attended a conference on Marco Island, Florida.[1] (Declaration of Tim Simmons ["Simmons Decl."], ¶ 2.) During a meeting that included the IEC, Creeden, Jones' wife, Kateryna Jones, and other staff, Jones told the group that he was the subject of an ongoing Department of Justice ("DOJ") investigation related to alleged financial misconduct. (Simmons Decl. ¶ 2.) At this same meeting, Jones admitted that on multiple occasions he had used Union funds to purchase flights to Ukraine to visit his wife and a home he owned. (*Ibid*.)  Jones also revealed that Creeden was under DOJ investigation. (*Ibid*.)

After the conference concluded, further information about Jones' financial misdeeds came to light. (*Id.* ¶ 4.) For example, in 2015, Jones authorized two payments to his wife, Kateryna Jones, totaling over $100,000. (*Ibid*.) These payments ostensibly compensated Kateryna Jones for

---

[1] Jones has served as International President since 2003. Simmons, Baca and Stadnick, are IVPs for various geographic sections. Fultz, also an IVP, was not named as a Defendant because he drafted and submitted the disciplinary charges against Jones, and thus did not participate in the decision to remove him. The remaining IVP is Lawrence J. McManamon. Jones and the five IVPs make up the IEC.

work she performed for the IBB between 2013 and 2015. (*Id.* ¶ 4, Exhibit ["Exh."] 1.)  During this time, however, Kateryna Jones was living primarily in Ukraine, where the Union has no members and conducts no business. (*Id.* ¶¶ 2-3.) There is no evidence that she was working for the IBB during this time period. (*Id.* ¶ 4.) Furthermore, credit card statements substantiated Jones' admission that he used Union funds for personal travel to Ukraine. (*Id.* ¶ 5.) These records also indicated that Jones used his Union credit card to expense thousands of dollars' worth of personal meals often with his wife near their home in North Carolina. (*Ibid.*)

Fultz filed disciplinary charges against Jones under Article 17.1.1 of the Union Constitution. (*Id.* ¶ 6, Exh. 3 [copy of written charges], Exh. 2 [copy of the IBB Constitution].) The IEC met on May 12, 2023, to determine how the charges should be processed, and (*Id.* ¶ 7.) determined that a meeting was authorized under Article 1.5 of the IBB Constitution, which states as follows: "When the International Brotherhood is not in Convention session, its executive and judicial powers only shall be vested in the International Executive Council.'" (*Id.* ¶¶ 6-7, Exh. 2, at p. 9.) Relying on Section 17.3.2 of the IBB Constitution, the IEC passed a motion during the May 12 meeting disqualifying Jones from participating in the subsequent disciplinary proceedings. (*Id.* ¶¶ 6-7, Exh. 2, at p. 46 ["Any member of the Executive Council who is directly involved in the proceedings so that the Council Member cannot function in an impartial manner shall not participate in the proceedings or be subject to challenge for cause."].)

At the same meeting, the IEC appointed Robert Lunsford, Business Manager of IBB District 57, to perform the limited duties of the International President related to the processing of the charges against Jones. (*Id.* ¶ 7.) The IEC determined this action was authorized pursuant to Article 4.5 of the IBB Constitution, which provides that "in the event of a vacancy in the office of the International President such vacancy shall be filled for the balance of the term by majority vote of the Executive Council." (*Id.* ¶¶ 6-7, Exh. 2, at p. 17.) In this unique situation, Lunsford took

3

over administrative duties regarding the charges that would normally belong to the International President, who was disqualified from performing them. (*Ibid*.) This included scheduling a hearing date and selecting a hearing officer. (*Ibid*.)

Lunsford scheduled the disciplinary hearing for May 30, 2023, at the Hilton Garden Inn in Kansas City, Missouri. (*Id.* ¶ 9.) He informed Jones and all other IEC members of the date, time, and location. (*Ibid*.) Lunsford chose Joseph Maloney, a retired former IVP, to serve as the hearing officer. (*Ibid*.) The hearing took place as scheduled, with Fultz presenting his evidence as the Charging Party, Maloney presiding as the appointed hearing officer, and Simmons, Baca, and Stadnick serving as the voting trial body. (*Id.* ¶ 12.) Jones did not attend. (*Ibid*.) Nor did IVP McManamon. (*Ibid*.) Instead, Jones sent two individuals to serve as "observers." (*Ibid*.) They asked questions but did not present evidence or make a statement on Jones' behalf, despite being given the opportunity. (*Id.* ¶ 10, Exh. 4 [Decision of the IEC], at p. 3.)

During the hearing, Fultz presented evidence of Jones' misuse of Union funds. This evidence included credit card statements showing Jones and Kateryna Jones paying for personal meals with their IBB credit cards; credit card statements showing Jones using Union funds to pay for flights to Ukraine; and emails sent by Jones instructing his staff to retroactively pay Kateryna Jones a significant salary. Neither of Jones' representatives rebutted this evidence.

The IEC issued a written decision on June 2, 2023. (*Id.* ¶ 12, Exh. 5.) The decision addressed alleged procedural defects in the disciplinary process, finding that (1) "there was repeated correspondence from … Jones and others acknowledging the Notice of Hearing and the fact that the hearing would be held on Tuesday, May 30, 2023"; (2) the IEC was authorized to process the disciplinary charges against Jones without his involvement because "Article 17.3.2 is extremely clear that the Executive Council has the duty and obligation to hear charges against any International Officer, including the International President"; (3) given the "unusual circumstances"

of charges being brought against a sitting International President, the IEC "complied with [the IBB Constitution] in substance given the unusual nature of the charges and the serious nature of them"; and (4) "[a]ny procedural defects were not substantive and were waived by President Jones' failure to appear or respond." (*Id.* ¶ 12, Exh. 5, at pp. 2-3.) The IBB Constitution requires the hearing proceed in the absence of the charged party. Art. 17.2.2.

Next the IEC addressed the substantive allegations. (*Id.* ¶ 10, Exh. 4, at pp. 4-5.) The IEC sustained three of the charges against Jones. The first involved Jones' payments to his wife under the guise of a Union salary. (*Id.* ¶ 12, Exh. 5, at p. 4.) The second involved Jones' use of a Union credit card to pay for personal meals at restaurants near his home in North Carolina. (*Ibid.*) And the third focused on Jones' flights to Ukraine. (*Id.* ¶ 12, Exh. 5, at pp. 4-5.)

After determining that the charges brought by Fultz were timely filed because "[t]he International Constitution does not provide a statute of limitations for misuse of Union funds," the IEC issued its decision: "President Jones is hereby removed immediately as International President," stripped of his membership in the Union, and "furthermore directed to reimburse the International Brotherhood of Boilermakers all of the funds which he misspent as reflected in these charges." (*Id.* ¶ 12, Exh. 5, at p. 5.) The IEC found that Jones' "shocking" misuse of Union funds was "conclusively established" by the documentary evidence and testimony. (*Ibid.*)

Jones refuses to comply with the IEC's decision. (*Id.* ¶ 14.) He has not left office. (*Ibid.*) Moreover, he has retaliated against the other IEC members by removing them from leadership positions. (*Ibid.*; Declaration of J. Tom Baca ("Baca Decl.") ¶ 3.)

### III. <u>LEGAL STANDARD</u>

A TRO "is an extraordinary remedy that is an exception rather than the rule." *Rajala v. Gardner*, No. 09-2482-EFM, 2012 WL 2178856, at *1 (D. Kan. June 14, 2012); *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (citations omitted) ("[A] preliminary injunction is an

extraordinary and drastic remedy …"); *see also Cortishae-Etier v. Ford Motor Co.*, No. 23-3081-JWL, 2023 WL 2868208, at *1 (D. Kan. Apr. 10, 2023) (citations omitted). A party seeking preliminary injunctive relief must establish "(1) a substantial likelihood of success on the merits; (2) irreparable injury to the movant if the injunction is denied; (3) the threatened injury to the movant outweighs the injury to the party opposing the preliminary injunction; and (4) the injunction would not be adverse to the public interest." *Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*, 269 F.3d 1149, 1154 (10th Cir. 2001).

## IV.  ARGUMENT

### A.    PLAINTIFF CAN NOT SHOW LIKELIHOOD OF SUCCESS ON THE MERITS

#### 1.    Plaintiff's LMRA claim will fail because Plaintiff cannot clearly establish that Defendants breached the IBB Constitution.

Union self-governance is favored, and courts should defer to a Union's reasonable interpretation of its own Constitution. *See, e.g.*, *James v. Int'l Broth. of Locomotive Engineers*, 302 F.3d 1139, 1145 (10th Cir. 2002); *Allen v. United Transp. Union*, 964 F.2d 818, 821 (8th Cir. 1992). This is a unique situation, as Jones disguises himself as the Union's representative, while the three Defendants, who represent the interests of the majority of the Executive Council—and thus, the majority of the broader membership—are left to defend themselves as individuals. Contrary to Jones' masquerade, Defendants' interpretation of the IBB Constitution is owed deference. They, not Jones, speak for the majority of the Executive Council.

This view is consistent with the IBB Constitution. At several points, the Constitution expresses the supremacy of the IEC over the International President. (Simmons Decl. ¶ 6, Exh. 3, at p. 9 [Art. 1.5: "When the International Brotherhood is not in Convention session, its executive and judicial powers only shall be vested in an International Executive Council."]; p. 18 [Art. 5.2: "The Executive Council shall have governing authority over the International Brotherhood and its subordinate bodies when not in Convention session to the end of upholding the laws and policies

of the Brotherhood as expressed in this Constitution."].) The Constitution does not grant the International President the right to override this authority unilaterally.

### a.      Jones' "Article 17 Committee" violated the IBB Constitution

Jones immediately sought to exert control over the disciplinary process, despite the fact that he was the sole charged party. (First Amended Complaint ["FAC"] ¶¶ 28, 32.)  Jones not only established a "committee" to "handle all matters arising out of" the charges but he personally appointed the members of that committee. (FAC ¶ 28.) Essentially, Jones hand-selected who would be investigating him. One of the members of this committee was Creeden, who approved Jones' improper expenses, and who Jones himself admitted was also under investigation by the DOJ for alleged financial misconduct. (*Ibid*; Simmons Decl. ¶ 10, Exh. 4, at p. 3; Simmons Decl. ¶ 2.) Unsurprisingly, the Jones' committee swiftly placed the charges against him "in abeyance" pending the results of a closed-door investigation. (FAC ¶ 33.)

None of these facts are disputed. Instead, Jones argues that the IBB Constitution *allowed him* to control the investigation into his own misconduct. (Plaintiff's Brief in Support of TRO ["Pltf. Brief"], at p. 9.) But even a cursory reading of the Constitution shows that this theory is ludicrous. The key provision is Article 17.3.2, which reads, in relevant part:

> The Executive Council shall have exclusive jurisdiction to hear charges against subordinate bodies and against International Officers. **Any member of the Executive Council who is directly involved in the proceedings so that the Council member cannot function in an impartial manner shall not participate in the proceedings or be subject to challenge for cause.**

(Simmons Decl. ¶ 6, Exh. 2, p. 46 [emphasis added].)

The provision's logic requires that the moment Fultz filed disciplinary charges against Jones, two things happened: (1) the IEC assumed jurisdiction, because Jones is an International Officer; and (2) Jones was disqualified from taking *any* action with respect to the handling of the charges. He was not allowed to form an investigatory "committee," nor was he permitted to hand-

pick the individuals who would make up that committee. If the disqualification language in Article 17.3.2 only kicks in *after* the IEC member who is charged has had a chance to review the charges, set the ground rules for the disciplinary process, and *personally choose who will be leading the investigation*, the language would be meaningless.

Of the four IEC members who were not personally involved (all except for Jones, the charged party, and Fultz, the charging party), three of the four (Baca, Simmons, and Stadnick), a clear majority, recognized this and interpreted the Constitution to prohibit Jones from controlling the disciplinary process through his puppet "Article 17 committee" (the other, McManamon, did not state a position). The IEC correctly determined that the committee was illegitimate and expressed this to Jones on multiple occasions. (Simmons Decl. ¶ 10.)

Jones claims that Article 17.3.2 did not mandate his immediate disqualification, or in the alternative, requires an "interpretation" that did not occur. (Pltf. Brief, at p. 10.) This argument is unpersuasive for two reasons. *First*, Article 17.3.2 is unambiguous. As the charged party, Jones was not permitted to take any action in response to the charges, including creating his own investigatory committee. *Second*, the "interpretation clause" of the IBB Constitution, Article 7.2, states as follows: "The International President shall hear and decide all questions involving interpretation or application of this Constitution… unless reversed or modified by the Executive Council upon proper appeal." (Simmons Decl. ¶ 6, Exh. 2, p. 25.) Clearly, Jones was disqualified from constitutional interpretations affecting how the charges would be processed and heard, just as he was disqualified from selecting who would investigate the charges. After Jones' disqualification, any question of how Article 17.3.2 of the Constitution should be interpreted fell back to the IEC.

          b.      **The process by which the IEC investigated processed, and decided the charges was compelled by the IBB Constitution**

Plaintiff asserts that not only was he allowed to control the disciplinary process against him, but the manner in which the IEC conducted its own simultaneous disciplinary process independently violated the IBB Constitution. (Pltf. Brief, at pp. 10-11; FAC ¶¶ 35-49.) Once again, however, a plain reading of the Constitution dispels this argument.

Plaintiff first takes issue with the IEC's decision to call a meeting for the purpose of determining how the charges should be processed. (Pltf. Brief, at p. 10; FAC ¶¶ 35-37.) By this point, the seriousness of the allegations against Jones was known and Jones had already created his illegitimate committee. The matter was clearly worthy of a prompt meeting. But Plaintiff falls back on Article 5.8, which states that "[t]he Executive Council shall meet on call of the International President as conditions warrant, but shall meet at least semi-annually, and shall meet immediately preceding and following each Convention." (FAC ¶ 28.) Article 5.8 cannot be read to mean that where charges are brought against the International President, he can freeze the disciplinary process by refusing to call a meeting. Clearly, the IEC may also call a meeting on its own, especially given that Article 17.3.2 grants the IEC full jurisdiction over the charges.

The IEC members recognized this, and interpreted the IBB Constitution, read in its entirety, to allow for a meeting. Specifically, they relied on Article 1.5, which provides: "When the International Brotherhood is not in Convention session, its executive and judicial powers only shall be vested in the [IEC]." (Simmons Decl. ¶¶ 6-7, Exh. 2, at p. 9.) In this situation, the IEC had jurisdiction over the charges against Jones, *and* had the right to exercise the "judicial powers" of the Union in this manner. If these powers are to mean anything, they must permit the IEC to meet and discuss serious allegations of financial misconduct levied against the International President.

Plaintiff challenges the IEC's decision at its May 12, 2023, meeting to declare Jones' creation of his puppet committee "null and void." (Pltf. Brief, at p. 11; FAC ¶ 38.) For the reasons

set out above, the IBB Constitution clearly prohibited Jones from creating the committee. He was not permitted under Article 17.3.2 to take *any* action with respect to the handling of the disciplinary process, let alone choose who would investigate the charges. Instead, the IEC had jurisdiction over the charges and a majority of the IEC members who were not personally involved (Baca, Simmons, and Stadnick, with McManamon abstaining) agreed that Jones' actions were illegitimate. (Simmons Decl. ¶¶ 6-8.) In this context, Plaintiff can point to *nothing* in the IBB Constitution that would prevent the IEC from nullifying Jones' committee. Instead, Plaintiff merely argues that the Constitution does not affirmatively and specifically, with the exact words "null and void," allow the IEC to nullify actions of the International President. (FAC ¶ 38.) The drafters of the IBB Constitution anticipated that International Officers, including the President, would be held accountable by the IEC.

Next, according to Plaintiff, the motion passed at the May 12, 2023, IEC meeting to disqualify Jones from participating in the handling of his own disciplinary charges also violated the IBB Constitution. (Pltf. Brief, at p. 11; FAC ¶¶ 41-42.) The only way to maintain such a baseless position is to completely ignore Article 17.3.2. Jones praises himself for abiding by the Constitution and supposedly recusing himself from the investigation. (FAC ¶ 34.) Of course, this was only after he dictated that the investigation would be handled by a special committee and appointed the members of that committee. It is unclear how Jones can hold the contradictory views that he was correct to recuse himself, but the IEC's disqualifying motion was improper.

Plaintiff also argues that the IEC's appointment of Lunsford to take over the duties of the International President for the limited purpose of the disciplinary process breached the IBB Constitution. (Pltf. Brief, at p. 11; FAC ¶¶ 43-45.) This argument is once again based solely on the premise that there is no specific language in the Constitution empowering the IEC to take this step. (*Ibid*.) There is, however, Article 17.3.2, which affords the IEC jurisdiction over the handling of

charges brought against an International Officer; *and* Article 4.5, which provides that "in the event of a vacancy in the office of the International President such vacancy shall be filled for the balance of the term by majority vote of the Executive Council." (Simmons Decl. ¶¶ 6-7, Exh. 2, at p. 17.) A clear majority of the non-disqualified IEC members interpreted these provisions, taken together, to authorize a limited-term, limited-purpose appointment. Lunsford—an impartial third-party with no connection to the case—handled the administrative aspects of the disciplinary proceeding against Jones. These are duties that under normal circumstances Jones himself would handle. Ultimately, Plaintiff cannot identify any specific language or constitutional provision that the appointment of Lunsford supposedly violates. The IEC has the authority under Articles 1.5, 4.5, and 17.3.2 to exercise its judicial powers in any manner that does not violate another provision of the Constitution. It did that here.

According to Plaintiff, Lunsford's decision to set a hearing date and subsequent written notification to Jones of this hearing date violated the IBB Constitution. (Pltf. Brief, at p. 11.) Jones' preferred method of handling the charges was to place them in abeyance, empower a hand-selected committee to "investigate" the charges behind closed doors, and apparently never hold a disciplinary hearing. But the IEC determined that Jones had no authority to do this, and Lunsford, the IEC's appointee, determined that May 30 was a reasonable date for the hearing given how vital this issue was for the membership. Again, Plaintiff cites no language in the Constitution that the IEC and/or Lunsford allegedly violated. In the FAC, Plaintiff notes that Lunsford sent his email on May 16, only 14 days before the scheduled hearing date. (FAC ¶ 47 [citing Article 17.2.2 of the Constitution, which requires 15 days' notice to the charged party].) Jones sent various written communications to the IEC acknowledging the hearing date, but he never once protested that he was given insufficient notice. (Simmons ¶ 10, Exh. 4, at pp. 2-3.) Nor did Jones appear at the hearing to argue the issue. In formulating their decision, the IEC considered this and found that

Jones waived any procedural arguments by failing to raise them in advance of or during the hearing.[2] (*Ibid.*)

### 2. <u>Plaintiff's LMRDA claim will fail because he has not demonstrated that Defendants denied him any statutory due process rights</u>

#### a. The Executive Council complied with LMRDA Section 101(a)(5)

Section 101(a)(5) provides that no union member may be disciplined absent written specific charges, a reasonable time to prepare their defense, and a full fair hearing. 29 U.S.C. § 411(a)(5); *Tincher v. Piasecki*, 520 F.2d 851, 854 (7th Cir. 1975) (this is *not* "the full panoply of procedural safeguards found in criminal proceedings"). Here, the IEC afforded Jones the required statutory protections and Fultz met the legal standard of providing "some evidence" in support of his charges. *Boilermakers v. Hardeman*, 401 U.S. 233, 246 n.14 (1971).

##### i. *The charges brought against Jones were specific*

"[A] union disciplinary charge must include a statement of the facts describing the incident on which the charge is based." *Johnson v. Nat'l Ass'n of Letter Carriers Branch 1100*, 182 F.3d 1071, 1074 (9th Cir. 1999). Union members *are not* held "to the standards required of a practicing attorney by requiring a highly technical statement of the facts." *Id.* "Instead, an informal written statement of facts suffices." *Id.*; *Magelssen v. Local Union No. 518, Operative Plasterers' & Cement Masons' Int'l Ass'n*, 233 F. Supp. 459, 461 (W.D.Mo.1964) ("[n]o technical formalities should be imposed"). "The level of detail required [to satisfy Section 101(a)(5)] is that needed to notify the accused of the incidents that form the basis of the charge so that he or she may prepare a defense." *Johnson*, 182 F.3d at 1074.

---

[2]   If Jones felt that the IEC was wrong to deem these procedural issues waived, he has an avenue to pursue this claim. Under Article 17.6.3 of the IBB Constitution, he can appeal the decision at the next International Union Convention. (Simmons Decl. ¶ 6, Exh. 2, at p. 48.)

Variously Plaintiff refers to the charges brought against Jones as "vague" and "incomplete." (Pltf. Brief, at p. 13; FAC ¶ 76.) The record contradicts this. Article 17.2.1 of the IBB Constitution merely requires that charges be in writing and "set forth with sufficient definiteness to inform the accused of the nature and circumstances of the violations complained of, together with a reference to the particular subsection of Article 17.1 under which the charges were brought." (Simmons Decl. ¶ 6, Exh. 3, at p. 43.) Fultz's charges were in writing. (*Id.* ¶ 6, Exh. 2.) Each included a specific date or time frame. (*Ibid.*) Fultz went above and beyond the minimum requirements. For several of the charges, he specified the location of Jones' unauthorized personal travel; he identified the individual who Jones paid a Union salary despite their not performing Union work; he spelled out the manner in which Jones was improperly using his Union credit card to pay for personal meals, and the location of these payments (near Jones' home). (*Ibid.*) Jones was clearly on notice. He was fully able to investigate the charges and prepare a defense. He simply chose not to.

Under normal circumstances, the International President is empowered to review disciplinary charges and ensure they are sufficiently specific. Here, Jones was disqualified from performing this task, so the IEC appointed Lunsford to take his place. Lunsford reviewed the charges and determined they met the specificity requirements of Article 17.1.2. (FAC ¶ 46.) There is no reason to disturb this finding. If Jones disagreed, he had ample opportunity before and during the hearing to inform the IEC of his concerns. But again, he chose not to. Plaintiff argues that the "Article 17 committee" requested more details about the allegations from Fultz. (*Id.* ¶ 50(c).) But, as explained above, this committee was illegitimate and had no power to make such a request. It is Jones who has due process rights under the IBB Constitution and the LMRDA—not the committee. Jones was responsible for raising these concerns himself. Unless, of course, Jones and

the committee are one-in-the-same. In which case it was all the more appropriate for the IEC to assume jurisdiction and nullify the improper committee.

No federal courts have interpreted the "written specific charges" language in Section 101(a)(5) of the LMRDA to require more specificity than what is found in Fultz's charges or Article 17.2.1 of the IBB Constitution. In the FAC, Plaintiff cites *Gleason v. Chain Serv. Rest.*, 300 F. Supp. 1241, 1252 (S.D.N.Y. 1969), aff'd, 422 F.2d 342 (2d Cir. 1970) for the proposition that the LMRDA requires "particulars, such as times, places and names." But Fultz's charges *do* provide times, places, and names. It is unclear what "particulars" are missing here.

In *Gleason*, the court found the charges lacking in specificity because the charging party withheld the names of union members from whom the accused had allegedly misappropriated certain fees and failed to describe with any particularity which grievances the accused failed to process over a three-year period. 300 F.Supp. at 1253. Without these details, the accused was left in the dark. Here, Fultz provided all of the information he reasonably could—names, dates, and types of transactions. Jones was well-positioned to mount a defense based on the information contained in the charges and the nature of those charges, which focused on transactions Jones personally entered into.

Importantly, the accused in *Gleason* repeatedly expressed to the charging party that he did not have enough information to defend himself, even after he requested (and the union provided) additional details. Jones made no such request here, and effectively waived this argument. The IEC could safely assume from Jones' silence that he fully understood what he was being accused of. *Id.* at 1251 ("The circumstances surrounding an alleged disciplinary infraction by a union member, and the time and place as nearly can be ascertained, ***constitute the minimal information that the union should disclose to the accused in order to afford him a reasonable opportunity to prepare his defense***.") (emphasis added).

ii.     *Jones had reasonable time to prepare his defense*

The LMRDA does not provide a minimum timeframe for an accused Union member to prepare a defense, only that they be given "reasonable" time. 29 U.S.C. § 411(a)(5). Once again, the cases cited by Plaintiff are inapposite. *Kuebler v. Cleveland Lithographers and Photoengravers Union Loc. 24-P* holds that the accused may request additional information to prepare for an upcoming disciplinary hearing. 473 F.2d 359 (6th Cir. 1973). Plaintiffs do not plead that Jones made any such request here, unless the illegitimate Article 17 Committee and Jones are one-in-the-same. (FAC ¶ 50(c).) Similarly, in *Thompson v. Intl. Union of Elevator Constructors, Loc. No. 2*, 05C2442, 2007 WL 1521247 (N.D. Ill. May 22, 2007), the Court found a violation of Section 101(a)(5) because the charging party refused to grant the accused an extension of time. Jones never requested that the IEC postpone the hearing on his disciplinary charges. He never asked for more time. Therefore, it was reasonable for the IEC to assume Jones was sufficiently prepared. *Ritz v. O'Donnell*, 566 F.2d 731, 735 (D.C. Cir. 1977) (Courts have "uniformly declared that union members who knowingly fail to exercise rights guaranteed or offered them in connection with union disciplinary proceedings have waived those rights.").

*Vars v. Int'l Bhd. of Boilermakers, Iron Shipbuilders, Blacksmiths, Forgers & Helpers*, 215 F. Supp. 943, 948 (D. Conn.), aff'd, 320 F.2d 576 (2d Cir. 1963), is eerily on point. There, the Union Constitution—the very same Union at issue here—provided that the accused was owed 15 days' notice between the notice of hearing and the hearing. *Id.* at 947. The accused claimed to have received the notice only 14 days before the hearing. *Id.* at 948. The Court still found he had reasonable time to prepare a defense. *Id.* ("It is significant to note that at no time has the plaintiff claimed that the one-day variance in his receipt of the notice actually prejudiced the preparation of his defense."); *see also Gabauer v. Woodcock*, 520 F.2d 1084, 1094 (8th Cir. 1975) (five days was a reasonable amount of time to prepare a defense).

iii.     ***Plaintiff cannot show that the Trial Body was biased against him***

Plaintiff rests his claim that the members of the Trial Body were not impartial exclusively on the fact that they participated in the disciplinary process. (FAC ¶ 50(a)-(i).) But they were constitutionally required to participate in this process, while Plaintiff was constitutionally banned from doing so. More to the point, Plaintiff seems to misunderstand what "impartiality" means in this context. Even in *Bishop v. Intl. Ass'n of Bridge, Structural, Ornamental and Reinforcing Iron Workers*, 310 F. Supp. 2d 33, 43 (D.D.C. 2004), which Plaintiff cites, the court found that a union disciplinary panel was not impartial because "eight of the twelve jurors who heard the charges had previously signed a petition circulated demanding the charged member's removal." *See also Wildberger v. Government Employees (AFGE)*, 86 F.3d 1188 (D.C. Cir. 1996) (lack of impartiality attributed to hearing officer and the accused being former political adversaries).

Here, Plaintiff does not allege that Defendants attempted to oust Jones or disagreed with Jones on a major issue of Union governance, or that they belonged to a rival faction. Indeed, in the recent past, Jones rewarded Simmons with two major leadership roles: Head of the Construction Division and Special Assistant to the Chief of Staff. (Simmons Decl. ¶ 1.) *See Sawyer v. Government Employees (AFGE)*, No. 96 Civ. 7599 (TPG), 1998 BL 414, 158 LRRM 2766 (S.D.N.Y. June 11, 1998), *aff'd*, 180 F.3d 31 (2d Cir. 1999) (trial body impartial where there was no history of political conflict between the disciplined member and the international president). Indeed they had worked together until the disclosure of the misuse of Union funds became known at the Marco Island meeting. See Baca Decl. ¶ 1; Declaration of Arnie Stadnick ("Stadnick Decl.") ¶ 1.

b.     **Plaintiff's claims do not implicate any other provisions of the LMRDA**

Plaintiff's remaining LMRDA claims can be disposed of quickly. He claims that Defendants violated Section 401(a), which protects the right of Union members to elect their own

leaders, and Section 411(a)(1), which gives members the right to nominate candidates and participate in Union democracy. (Pltf. Brief, at p. 14.) Neither of these provisions, however, prevent a Union from protecting its financial interests by maintaining rules against misuse of Union funds or from instituting an internal disciplinary process. It is unclear from the pleadings how Defendants violated Section 401(a) or Section 411(a)(1). Again, there are no factual allegations that any of the named Defendants, or Fultz, made previous efforts to remove Jones from office or that this disciplinary process was merely one element of an ongoing scheme. Defendants each had recently been appointed to leadership roles within the Union *by Jones*. IBB members had the right to select the delegates who elected Jones at the 2021 convention, and they exercised that right. Similarly, Simmons, Baca, and Stadnick, as elected IVPs and members of the IEC, have the right to make judicial decisions in the interests of the membership. Which is exactly what they did when, after hearing evidence, they removed Jones from office.

### c.     Plaintiff has not made a showing of prejudice

In order to establish a violation of Title I of the LMRDA, a plaintiff must not only prove a violation but also demonstrate that they were prejudiced or misled in the presentation of their defense. *Newell v. IBEW*, 789 F.2d 1186, 1190 (5th Cir. 1986) (involving Section 101(a)(5)(C)); *Frye v. USWA*, 767 F.2d 1216, 1223 (7th Cir. 1985) (involving Section 101(a)(5)(A)); *Vars*, 215 F.Supp. at 948; *see also Int'l Bhd. of Boilermakers, Iron Shipbuilders, Blacksmiths, Forgers & Helpers, AFL-CIO v. Hardeman*, 401 U.S. 233, 245, 91 S. Ct. 609, 617, 28 L. Ed. 2d 10 (1971) ("Respondent does not suggest, and we cannot discern, any possibility of prejudice.")

Jones failed to make any requests of the IEC before the hearing and failed to appear at the hearing to argue his case or even object. Even now, he hides behind the institutional Union, and has not personally explained how he was prejudiced by any of these alleged LMRDA violations.

He has not alleged how the supposedly "vague" charges impaired his ability to prepare a defense, nor has he explained how the alleged lack of reasonable time to prepare harmed his interests.

> **3.**   **Plaintiff's causes of action fail because Defendants, as individuals, lack the power to restore Jones' membership or return him to office**

Lastly, Jones' claims fail on the merits because it is unclear what exactly he is asking the Court to do. Jones is holding himself out as the President of the IBB. He does not acknowledge the IEC decision that removed him from office. That decision is not self-enforcing and has not been judicially enforced. Yet Jones is still asking the Court to make the three Defendants restore his membership and his job. Jones cannot point to any provision of the Union Constitution that would allow Defendants to unilaterally rescind the disciplinary decision of a majority of the IEC.

**B.   PLAINTIFF HAS NOT DEMONSTRATED THAT IRREPARABLE INJURY IS LIKELY ABSENT PRELIMINARY INJUNCTIVE RELIEF**

"Plaintiffs seeking preliminary relief [must] demonstrate that irreparable injury is likely in the absence of an injunction." *Winter*, 555 U.S. at 22 (citations omitted). A "possibility of irreparable harm" is not enough. *Id*. It is well-established "that loss of employment is not irreparable harm except in a 'genuinely extraordinary situation.'" *Open Tech. Fund v. Pack*, 470 F. Supp. 3d 8, 29 (D.D.C. 2020) (quoting *Sampson v. Murray*, 415 U.S. 61, 92 n.68 (1974)); *Murrell v. Laster*, No. 90-4169-R, 1990 WL 171051, at *5 (D. Kan. Oct. 15, 1990).

Jones' irreparable harm argument is unpersuasive. He claims that if the IEC's decision stands, "the IBB will be thrown into extreme confusion about who is properly in charge," "the Union's operations will be "cripple[d]," and there will be "confusion" "about who is in charge" of the Union. (Pltf. Brief, at p. 8.)  But it is *Jones* who is causing this confusion. If there is a question about who is in charge, that question was wholly manufactured by Jones.

The only case Jones cites to support his irreparable harm argument is *Nat'l Elec. Contractors Ass'n, Inc. v. Kansas Chapter, Nat. Elec. Contractors Ass'n, Inc.*, 46 F. Supp. 2d 1174,

1186 (D. Kan. 1999), aff'd sub nom. 203 F.3d 835 (10th Cir. 2000) ("NECA"). But in *NECA*, *the defendants* were accused of the exact same behavior *Jones* is accused of here. It was the defendants who engaged in a "curious" manipulation of their Chapter's bank account and were violating their organization's constitution and bylaws. *Id*. Here, Plaintiff is misusing funds, causing factionalism and turmoil, and Constitutional violations.

Plaintiff omits the fact that the disciplinary process against Jones is not "ongoing"—it is over. Plaintiff states that Defendants should not be "allowed to go forward with their plan," nor "allow[ed] … to continue down this path." (Pltf. Brief, at p. 8.) Later Plaintiff argues that Defendants should be "enjoined from further proceeding with their hearing." (*Id.* at p. 14.) This is intentional misdirection. The IEC has already heard the evidence against Jones and already issued a written decision. There is not an upcoming hearing that the Court can block. Even if Plaintiff was correct that Defendants violated the LMRA or LMRDA, the supposedly "irreparable" damage is done.

## C.    THE BALANCE OF THREATENED INJURY FAVORS DEFENDANTS

Plaintiff argues that "Defendant IVPs face minimal—if any—harm if they are enjoined from further proceeding with their hearing" because "the IBB initiated an investigation into the charges against International President Jones before they convened their extra-constitutional proceeding." (Pltf. Brief, at p. 14.) But this argument fails for two reasons.

*First*, the "threatened injury" that *Plaintiff* allegedly faces is wholly fabricated. Clearly, the IEC decision is not self-enforcing. Jones has not followed it and has given no indication that he will. Unless the status quo changes, Jones is not at risk of any harm. His status is secure. At the same time, while the IEC decision is clearly not binding, it *is* final. There are no further proceedings in Jones' disciplinary case. If Jones does not feel that he has to follow the IEC's decision, it is not as if there is a subsequent proceeding that *will* bind him. To the extent that Jones

was exposed to any potential harm as a result of the disciplinary process, that harm would have already happened. His TRO motion comes too late for the Court to take any action.

*Second*, the argument that this Court can feel safe in rescinding the IEC decision because the "Article 17 committee" is conducting its own investigation is laughable. Jones created the committee and hand-picked its members. Creeden, who signed off on Jones' improper payments and who is himself under investigation, is a member of the committee. There is no way the committee will investigate impartially. Quite simply, the IEC, which is vested with broad judicial powers under the IBB Constitution, is the only arm of the Union that has the authority and willingness to hold Jones accountable until the next IBB Convention in 2025. If this Court strips that authority from the IEC, Jones will tighten his grip on the Union, and retaliation will continue. (*See* Simmons Decl. ¶ 14-15; Baca Decl. ¶ 3-4; Stadnick Decl. ¶ 3-4).

**D.     GRANTING PLAINTIFF'S REQUEST FOR PRELIMINARY RELIEF WOULD BE ADVERSE TO THE PUBLIC INTEREST**

The only public interest at issue in this case is the interest in seeing corrupt, dictatorial Union leaders held accountable. Jones was charged with misusing IBB funds. Consistent with the Union's Constitution, the IEC assumed jurisdiction and disqualified Jones from participating in the disciplinary process. The IEC held a hearing, where Fultz presented strong evidence of Jones' financial misconduct. The IEC then issued a decision removing Jones from office and stripping him of his membership. It would be clearly contrary to the public interest for this Court to interfere with this process and legitimize Jones' continued control over the IBB.

## IV.     CONCLUSION

Jones' conduct is unforgivable. His fellow Union officers followed a democratically created process to hold him accountable for these offenses. At this stage, there is no compelling reason for the Court to interfere with this process or the ultimate result.

_____

Raymond Salva, Jr.    Mo. Bar No. 66191
John B. Boyd          Mo. Bar No. 23716
BOYD, KENTER, THOMAS & PARRISH LLC
221 W. Lexington Avenue, Suite 200
Independence, MO  64050
Phone:  816.471.4511
Fax:  816.471.8450
Email:  rsalva@bktplaw.com

and

Antonio Ruiz          CA Bar No. 15569
(Pro Hac Vice)
David A. Rosenfeld    CA Bar No. 58163
(Pro Hac Vice)
William T. Hanley      CA Bar No. 327126
(Pro Hac Vice)
WEINBERG, ROGER & ROSENFELD
1375 55th Street
Emeryville, CA 94578
(510) 337-1001
(510) 337-1023 fax
aruiz@unioncounsel.net
drosenfeld@unioncounsel.net
whanley@unioncounsel.net

**ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

I hereby certify that on the 15th day of June 2023 I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel on record.

_____
ATTORNEY FOR DEFENDANTS