IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers, AFL-CIO<br><br>Plaintiff,<br><br>v.<br><br>J. Tom Baca (Officer Capacity), et al.,<br><br>Defendants. | Case No. 23-2250 |

## DECLARATION OF TIMOTHY SIMMONS

I, Timothy Simmons, declare:

1. I am a second-generation Boilermaker and was referred to my first job with the International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers, AFL-CIO ("Boilermakers") in January of 1999. I became a member of the Boilermakers in 2000. At that time, I was working as a sub-journeyman. In 2005, I was elected Recording Secretary of my home Local and was elected additional terms in 2008 and 2011. I became a dispatcher for my Local Union in 2008. In 2014, I was elected to the position of Secretary Treasurer of my Local Union and was appointed as the Business Agent. In 2017, I was appointed by International President Newton B. Jones to the positions of Director of National Recruitment Services, Assistant to the International President, and Assistant Director of Construction Sector Operations for the Boilermakers. In 2018, I was appointed Director of Construction Division Services. In January of 2022, I was appointed to the position of Executive Director of Construction Sector Operations, and in June of 2022 to the positions of Administrative Assistant to the International President and Chief of Staff. In February 2023, I was elected by the International Executive Council to become the International Vice President to the Boilermakers representing the Southeast states. I was also

appointed by International President Jones to the positions of Secretary of the National Joint Rules and Standards Committee, Advisory Member to the National Board of Boiler and Pressure Vessel Inspectors, as a Trustee on the Boilermaker National Pension and Health & Welfare Funds, and other positions as needed.

2. In February 2023, I attended the Boilermakers Construction Sector Operation's conference at Marco Island. Prior to the conference, there was a meeting called by Newton B. Jones. Attending were Kateryna Jones, Vice Presidents, J. Tom Baca, Arnie Stadnick, John Fultz, Lawrence McManamon, International Secretary Treasurer William Creeden, and Administrative Staff Kathy Stapp. Also present during this meeting were attorneys: David Elbaor, Jason McClitis, and Michael Stapp. We were informed at that time that there was an investigation by the Department of Justice alleging financial misconduct on the part of Mr. Jones and Mr. Creeden. During that meeting, Mr. Jones admitted that he had used union funds for the purpose of traveling to Ukraine with his wife to visit the Ukraine.

3. I was shocked and surprised by these revelations. To my knowledge, the Boilermakers do not have any membership in Europe and travel to the Ukraine serves no union purpose. Consequently, I was shocked that significant sums of money were spent by the Boilermakers for Mr. Jones' personal travel.

4. After returning from Marco Island, I investigated the claims of financial misconduct. I spoke with staff at the Kansas City office and was provided numerous records. I discovered an email from Newton B. Jones addressed to Tyler Brown, his administrative assistant. The email is dated August 22, 2015, at 4:13 p.m. The email reads as follows:

> Tyler:
> I believe Kate is still owed her first-year salary. As you know we were not able to pay her then because she could not come to the USA and did not have a US social security number. Please arrange to have

> the amount owed her deposited into her account and confirm with
> me.
> Thanks.
> Newt.

Attached as Exhibit 1 to this Declaration is a copy of that email. In addition, I found two wire transfers providing payments of significant sums to Mr. Jones' wife, Kateryna Jones. First, there was a payment transmitted on August 26, 2015, in the net amount of $38,911.60 ($58,763.12 gross). Second, there was a wire transfer dated April 17, 2015, in the net amount of $32,376.82 ($49,781.38 gross) to Mrs. Jones. The gross sum of both payments is $108,544.50, not including additional contributions to our Boilermaker National Funds and Officers' and Employee Pension Plan on Mrs. Jones' behalf. Both payments were supposedly for work that Mrs. Jones purportedly performed in the years between 2013 and 2015. I am not aware of Mrs. Jones performing any work on behalf of the Boilermakers during that time.

5.      In addition, I found several records that substantiate the payment of Boilermakers funds for Mr. Jones and his wife to travel to Ukraine. The records revealed that Mr. Jones and his wife went to Ukraine using Boilermaker funds at least three (3) times at a total expense of $20,852.32. In addition, I reviewed credit card statements related to Mr. and Mrs. Jones' expenditure. The credit card statements revealed excessive amounts of Boilermakers funds being used for purposes that did not appear to benefit the Union whatsoever, such as miscellaneous iTunes charges, meals, etc. After reviewing the meals that were paid for on the Boilermaker credit card in Chapel Hill, North Carolina where he resides for himself, his wife and other family members, my concern grew significantly. According to what I was able to review, International President Jones had also paid for meals in the surrounding cities of Raleigh and Durham, North Carolina for himself and his family. I also noticed that if the meals were not paid for on International President Jones' card, they were being paid on the Boilermaker credit card issued to

his wife, Kateryna Jones. I found approximately $40,000.00 of what I would consider wasteful and excessive spending just on meals. It also appeared that many of his reasonings for these payments were that he would call someone during a meal and consider it a business expense. This is not what I would consider reasonable, appropriate, or acceptable. Also, I was able to review payments made to assist his wife in gaining a visa for a trip to Australia for $613.98 on September 8, 2016, and a Grand Canyon Sunset Helicopter Tour with Dinner for his wife, himself, and others on July 22, 2016, at a cost of $5,999.88. I believe there are many other instances of wasteful spending but would need to be able to fully review and audit the records of expenditures of union funds without retaliation and personal attacks as a member of the Executive Council.

The Boilermaker Constitution (a true and correct copy of the Constitution is attached as Exhibit 2) under Article 5.2 General Duties of the Executive Council, lines 13 – 16 states:

> The Executive Council shall have the power to supervise all business and financial affairs of the International union and to authorize all expenditures deemed necessary to effectuate or accomplish the objectives of this International union,…

It is also my understanding that the International Secretary-Treasurer had directed his office staff to give any International Vice President any information they requested. I am also concerned on the use of the relocation policy for International President Jones' family members and International President Jones' wife substantial pay increase from approximately $104,000 to $165,000 in February of 2023.

6.    I shared this information with my fellow Vice Presidents, namely, J. Tom Baca, Arnie Stadnick, and John Fultz. They all expressed outrage by these inappropriate expenditures. John Fultz filed charges against Newton B. Jones alleging a violation of the Boilermakers Constitution, namely, Article 17.1.7. Attached as Exhibit 3 is a copy of the charges against President Jones.

4

7. All five (5) International Vice Presidents met by Zoom, on April 1, 2023, to discuss the allegations against International President Jones. Blake & Uhlig attorney, Jason McClitis, was also on the call. We discussed the allegations and made four (4) motions. Motion 1 was to protect the identity of the Whistleblower per the IBB policy. Motion 2 was to form a committee to go to headquarters in Kansas City, KS to review the alleged expenditures. Motion 3 was to limit the authority of the International President on making any staffing changes due to potential retaliation against staff. Motion 4 was to limit the authority of the International President to make any modifications of wages during the investigation to limit the potential for retaliation against staff. All five (5) International Vice Presidents voted to approve these motions. Please note, any International Vice President could have refused to participate on the call, abstained from voting or voted no. All International Vice Presidents voted unanimously to approve these motions. Since that time, International Vice President Lawrence McManamon rescinded his motions made on April 1, 2023, by email dated May 7, 2023, stating:

> Gentlemen,
>
> I did not have a Constitution available during the call and failed to understand exactly what motions were made and/or agreed to at that meeting. I hereby rescind any and all votes I may have made during that meeting.
>
> Lawrence McManamon
> International Vice President
> Great Lakes Area

8. After the charges were filed, the members of the International Executive Council met on May 12, 2023. All Executive Council members were in attendance, except International President Newton B. Jones. International Vice President Lawrence McManamon was in attendance but stated that it was not an official International Executive Council meeting after the first motion. We called a meeting to address the proper processing of the charges against Newton B. Jones. We

concluded that we not only had the authority but the obligation to meet to address these violations of the Constitution. I based that conclusion in part in Article 1.5 of the Constitution. Article 1.5 provides:

> When the International Brotherhood is not in Convention session, its executive and judicial powers only shall be vested in the International Executive Council, herein called the "Executive Council."

See Constitution, attached as Exhibit 2, at p. 9. I concluded that Mr. Jones should not participate in any proceeding involving the charges pending against him. I based this conclusion in part on Section 17.3.2 of the Constitution, which provides in part:

> Any member of the Executive Council who is directly involved in the proceedings so that the Council Member cannot function in an impartial manner shall not participate in the proceedings or be subject to challenge for cause.

At a meeting of the Executive Council on May 12, 2023, we passed a motion disqualifying Newton Jones from being involved in the processing of the charges against him. Although both Mr. Fultz and Mr. McManamon were present, they did not participate in that vote. Instead of Mr. Jones being responsible for having any role in the processing of the charges against him, the Executive Council appointed Robert Lunsford, Boilermaker District Lodge 57 Business Manager, to perform the functions of the International President related to the processing of the charges against Mr. Jones and to make certain that International President Jones was given due process and treated fairly. Mr. Jones was informed of this decision and that the investigatory committee he created was improper.

9. I felt that we were authorized to take this action in part by Article 4.5 of the Constitution. Article 4.5 provides that "in the event of a vacancy in the office of the International President such vacancy shall be filled for the balance of the term by majority vote of the Executive Council." See Constitution, Article 4.5 at p. 17, lns. 5-7. In the situation we were confronted with,

it would be improper for Mr. Jones to perform the role of the International President in processing the charges against him. Consequently, the situation was analogous to a partial vacancy. Consequently, I felt it was appropriate to appoint an individual, namely Mr. Lunsford, to perform his functions in connection with the processing of the charges. Mr. Lunsford performed those functions by establishing a hearing date and naming a Hearing Officer.

10. The Hearing Officer selected was Mr. Joseph Maloney, Retired Boilermaker International Vice President of Canada. The hearing was scheduled to take place on May 30, 2023. Mr. Jones and all members of the Executive Council were informed of the date. In addition, Robert Lunsford sent notice of the hearing on Tuesday, May 16, 2023, which if you count starting with May 16, 2023, is exactly fifteen (15) days prior to the hearing on Tuesday, May 30, 2023.

11. The reason for the expedited notice was due to Article 17.2.2 – Notice of Trial, lines 44 – 48, which states:

> …as the case may be, shall fix a time for trial which shall be not later than forty-five (45) days following receipt of such charges and shall give the accused at least fifteen (15) days notice of the time and place of a hearing on such charge at which such accused shall appear and defend.

Since the charges were filed on April 14, 2023, the forty-five-day deadline was approaching. If Mr. Jones had requested an extension for the trial date, it would have been granted by the Executive Council; however, I have not been contacted by Mr. Jones to discuss this matter since the April 2, 2023 Zoom call. In addition, International Vice President Fultz provided the evidence used at the Article 17 hearing to Blake & Uhlig attorney Jason McClitis on April 5, 2023. On May 15, 2023, Attorney McClitis emailed Mr. Fultz and notified him that the documents had been given to International Secretary William Creeden. Since Mr. Creeden and Mr. Jones are closely aligned, he would have all the documents, except for one excel spread sheet listing some of his expenditures for meals, relied upon for his Article 17 hearing earlier about a month before his hearing.

7

12. On May 30, 2023, Mr. Jones did not appear at the informal conference or the formal hearing. Instead, he sent two individuals, Kyle Evenson, retired Executive Director of Construction Sector Operations and current consultant, and Daniel McWhirter, Administrative Assistant to the International President. They represented that they were Mr. Jones' observers. At the hearing, Mr. Fultz presented the case against Mr. Jones. Attached as Exhibit 4 is a full set of the transcript and exhibits that were submitted in connection with the Article 17 proceedings against Mr. Jones. After considering the evidence presented, the Executive Council issued an order. Attached as Exhibit 5 is a full copy of the order. Among other things, the order concluded that Mr. Jones should be expelled from his position and that he should be stripped of his membership in the Boilermakers.

13. Had Mr. Jones appeared and either offered a plausible explanation for the expenditures, or offered to arrange repayment of the expenditures, I may not have voted in support of the charge against him. Faced with evidence of misconduct and no evidence to the contrary, I had no choice but to vote in support of the charge against Mr. Jones.

14. Mr. Jones has refused to comply with the Order, and he has remained in place in the office and he has taken several actions against me since the filing of these charges. Namely, I have been removed from the following positions due to retaliation from Mr. Jones:

   a. Administrative Assistant to the International President
   b. Chief of Staff
   c. Executive Director of Construction Sector Operations
   d. Secretary of the National Joint Rules and Standards Committee
   e. Trustee – Boilermaker National Funds Pension Plan
   f. Trustee – Boilermaker National Funds Health & Welfare Plan
   g. Trustee – MOST Programs
   h. Trustee – Boilermaker National Apprenticeship Program

      i. My business travel to serve the members of my organization has also been limited by Mr. Jones

15. Furthermore, Mr. Jones has filed Article 17 charges against me to prevent me from performing my fiduciary obligations under the LMRDA 29 U.S. Code 501 – Fiduciary responsibility of officers of labor organizations and under Article 5.2 of the International Brotherhood of Boilermakers' Constitution. He will seek to have me removed as an elected Vice-President and perhaps even take away my membership. Mr. Jones is also attempting to hinder me from servicing the members of my region by attempting to limit my travel to only my geographical jurisdiction. All of this retaliation is a result of my performing the duties to which I was elected as a Vice-President and member of the Executive Council.

I declare under penalty of perjury under the laws of the United States of America that the foregoing statement is true and accurate. Executed on June 14, 2023.

_____
TIMOTHY SIMMONS