## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

INTERNATIONAL BROTHERHOOD
OF BOILERMAKERS, IRON SHIP
BUILDERS, BLACKSMITHS, FORGERS
AND HELPERS, an unincorporated
association,

     *Plaintiff,*

 vs.

Case No. 23-2250-EFM

J. TOM BACA (officer capacity), TIM
SIMMONS (officer capacity), ARNIE
STADNICK (officer capacity),

     *Defendants.*

AND

J. TOM BACA (officer capacity), TIM
SIMMONS (officer capacity), ARNIE
STADNICK (officer capacity), JOHN T.
FULTZ (officer capacity),

     *Counter/Third-Party Plaintiffs,*

vs.

INTERNATIONAL BROTHERHOOD
OF BOILERMAKERS, IRON SHIP
BUILDERS, BLACKSMITHS, FORGERS
AND HELPERS, an unincorporated
Association, NEWTON B. JONES,
KATERYNA JONES, and WILLIAM B.
CREEDEN,

     *Counter/Third-Party Defendants.*

## MEMORANDUM AND ORDER

Before the Court is a Motion for Preliminary Injunction by Defendants/Third-Party Plaintiffs J. Tom Baca, Tim Simmons, Arnie Stadnick, and John T. Fultz (Doc. 33).[1]  Defendants seek the removal of Newton B. Jones from his office of International President of the International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers, and Helpers ("IBB"). After a prior hearing on this Motion which Jones did not attend, the Court issued an interim preliminary injunction on June 22, 2023, and scheduled a new hearing to fully decide Defendants' Motion.  That hearing took place on July 27, 2023.  The Court, having considered the arguments and evidence advanced by the parties, denies Defendants' Motion because Defendants have failed to show that the four relevant factors favor granting them a mandatory preliminary injunction. However, to preserve the status quo of the parties prior to their dispute, the Court readopts in full the interim preliminary injunction as issued on June 22, 2023.

### I.    Factual and Procedural Background

IBB is a union with roughly 50,000 members throughout the United States and Canada. IBB's Executive Council ("IEC") consists of International President Newton Jones and the five International Vice-Presidents: Baca, Simmons, Stadnick, Fultz, and Lawrence J. McManamon (collectively the "IVPs"). The International President and IVPs are union elected officers.  This case stems from Jones' alleged misuse of union funds.

Fultz initially brought charges against Jones, claiming that Jones had funneled hundreds of thousands of dollars to his Ukrainian wife, Kateryna Jones, for work she never performed.  Upon

---

[1] As noted by the Court in its July 27, 2023, hearing, the parties will recaption the case to accurately reflect the interested parties and their relative positions.

hearing these charges, Jones announced that he had created a committee—dubbed the Article 17 committee by IBB's counsel—to investigate the charges against him and appointed certain members to that committee.  One of those members was William Creeden, IBB's Secretary Treasurer, who had authorized the payments to Jones' wife.  Jones relied on Article 17.2.2 of the iBb Constitution which requires the International President to establish a hearing date when charges are brought against an IBB member.

The IVPs, with the exception of McManamon, claimed that Jones' appointed committee was illegitimate under the Article 17.3.2.  This provision states:

> The Executive Council shall have exclusive jurisdiction to hear charges against subordinate bodies and International Officers.  Any member of the Executive Council who is directly involved in the proceedings so that the Council member cannot function in an impartial manner shall not participate in the proceedings or be subject to challenge.

Because Article 17.3.2 precluded Jones' involvement in proceedings brought pursuant to charges against him, the IVPs interpreted this provision as creating a very limited vacancy in the International President position.  To be clear, the office of International President was not itself vacant—rather, Jones could not perform certain duties inherent in the office, such as setting a hearing date or appointing a committee to hear the charges.  Acting under Article 4.5, which allows the IEC to fill the International Prescient office when vacant, Baca, Simmons, and Stadnick appointed a third party, Robert Lungsford, to perform the duties of the International President solely in regard to the procedure for hearing charges against Jones.

On May 30, 2023, a hearing was convened to address the charges against Jones.  Baca, Simmons, and Stadnick acted as the tribunal, with Fultz presenting evidence against Jones.  Out of the IVPs, only McManamon was absent.  Jones did not attend, instead sending two representatives in his place.  When given the opportunity to put on evidence on Jones' behalf,

those representatives declined.  Baca, Simmons, and Stadnick, purportedly acting for the Executive Council, voted to remove Jones from his office of International President, Fultz having recused himself from the vote because he acted as prosecutor.  These three IVPs issued a written decision on June 2, 2023, finding Jones guilty of violation of the IBB's Constitution, removing him from the office of President, and stripping him of his IBB membership.

Jones decried the legitimacy of this proceeding, refused to step down as International President, and quickly began a pattern of retaliation against the IVPs who partook in the hearing by declaring them removed from committee and trustee appointments.  He also brought internal charges against Baca, Simmons, Stadnick, and Fultz, alleging that it was in fact they who violated the IBB's Constitution.

Masquerading as the IBB itself, Jones initiated this present action against Baca, Simmons, and Stadnick.  He sought injunctive relief nullifying the June 2 decision and prohibiting further action against him as IBB President.  The IBB's counsel represented Jones' interest at this point in the litigation.

In response, Baca, Simmons, and Stadnick, now joined by Fultz, asserted counterclaims against Jones, his wife, and Creeden for breach of the IBB Constitution under 29 U.S.C. § 185, retaliation under 29 U.S.C. § 411(a)(2), and breach of fiduciary duty under 29 U.S.C. § 501(a).  Simultaneously, Defendants field the present Motion for a Temporary Restraining Order or Preliminary Injunction.  This Motion purportedly sought the "limited relief" of having Jones removed from office pending the resolution of this case.

On June 20, 2023, the Court held a hearing to decide the Motions.  Jones did not attend.  At the hearing, the Court determined from the facts of the case that the central issue presented is who controls IBB—Jones or the Executive Council.  The Court noted that IBB itself cannot take

a side in a matter to determine who controls it.  Therefore, for IBB's counsel, who represented to the Court that he represented IBB and *not* Jones, to advocate for Jones' side of the conflict would be a conflict of interest.[2]  Accordingly, the Court concluded that IBB's counsel could still represent IBB's interests at the hearing, but they could not argue for Jones' interpretation of the IBB's constitution.  Because Jones had failed to hire any counsel to represent himself and he failed to appear in person, Jones was unrepresented at the hearing.

Given that there was no one to argue on Jones' behalf, IBB's counsel moved to continue the hearing until Jones could obtain counsel.  The Court granted the motion.  In the meantime, the Court noted that it still had to address the emergency nature of the case and asked the parties for recommendations.  The parties agreed that it would be best to preserve the status quo pre-May 30, 2023, until the Court could rule on the pending issues in this case.  They also agreed that certain restrictions on Jones' presidential powers would be suitable to prevent him from potentially abusing his position.  Therefore, the Court issued the following preventative measures as an interim preliminary injunction:

1. The June 2, 2023, decision by the Executive Council removing Jones from office and membership in the IBB is abated pending subsequent resolution of this matter.

2. Jones' removal of the IVPs from their committees and trustee positions is abated and vacated pending subsequent resolution of this matter.

3. Jones is prevented from any attempt to remove members of the Executive Council from such positions or taking other retaliatory action against them.

---

[2] The Defendants never raised this issue in any of their briefing, leaving it for the Court to address *sua sponte* at the hearing.

4.  All other proceedings involving charges against either Jones or the IVPs are abated pending subsequent resolution of this matter, including Jones' Article 17 committee and any internal charges against the IVPs.

5.  Jones may not travel internationally except to Canada, and then only for business purposes.

6.  Jones may not use his IBB credit cards.

7.  To the extent Jones incurs business expenses which he believes are reimbursable by the IBB, he shall demonstrate the business purposes of those expenses to the Executive Council's satisfaction before reimbursement.  The Executive Council must exercise good faith in allowing reimbursement of bona fide business expenses.[3]

The Court restated these interim preliminary injunctions in an order issued on June 22, 2023.[4]

Soon after, Jones, Kateryna, and Creeden all appeared via newly acquired counsel and filed answers to Defendants' counterclaims.  Jones, however, did not submit any motion for an injunction against Defendants, nor did he adopt IBB's prior motion.  Furthermore, Jones did not respond to Defendants' Motion.  Defendants then filed a "Notice of Failure to File Opposition" in which they noted that no opposition to their motion for injunction had been filed and claimed that Creeden, Jones, and Kateryna had paid themselves over half a million dollars in unused vacation time since the June 20 hearing.[5]

---

[3] *See* Doc. 50 at 4–5.

[4] *Id.*

[5] The legality of this action is suspect, in that if the Court ultimately decides that Jones was removed from office by the June 2, 2023 decision of the IEC, then he was without authority to do this.  That issue, however, is not currently before the Court.

On July 27, 2023, this Court held a follow-up hearing to address Defendant's Motion.[6]  All parties were present and represented.  None of the parties put on any evidence, relying instead on the affidavits and exhibits already filed as attachments to the parties' pleadings and motions.  After much debate over the proper interpretation of the IBB's Constitution, the Court asked the parties to address the relevant legal standards for a preliminary injunction.  Given this Court's previous injunction preserving the pre-May 30 status quo,[7] the Court directed the parties to specifically address what irreparable harm would result from the failure to remove Jones as International President.

In addressing reparable harm, Defendants' counsel claimed that the IBB was experiencing "chaos," such as not knowing whether an "ISO conference" would take place.  He also claimed without evidentiary support that the confusion over the IBB's leadership was injuring the IBB's relationship with employers.  He did not address any of the other relevant factors, nor did he put on evidence showing that Defendants would individually suffer irreparable harm.

After the close of arguments, the Court informed the parties it would issue its ruling as a written Order instead of from the bench.  This is that Order.

## II.    Legal Standard

Preliminary injunctions are extraordinary remedies—courts will not grant them as a matter of right.[8]  "The purpose of a preliminary injunction is not to remedy past harm but to protect [movants] from irreparable injury that will surely result without their issuance."[9]    Thus,

---

[6] Because the Court determined that IBB could not advocate on Jones' behalf and because Jones never adopted nor filed his own motion for a preliminary injunction, the Court determined that the only Motion before it was Defendants'.

[7] *See id.*

[8] *Blackmon v. U.S.D. 259 Sch. Dist.*, 769 F. Supp. 2d 1267, 1277 (D. Kan. 2011).

[9] *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1267 (10th Cir. 2005).

preliminary injunctions preserve the status quo pending the outcome of the case.[10]  "[T]he status quo is 'the last uncontested status between the parties which preceded the controversy until the outcome of the final hearing.' "[11]  To put it another way, the status quo is the "last peaceable uncontested status existing between the parties before the dispute developed."[12]  "In determining the status quo for preliminary injunctions, this court looks to the reality of the existing status and relationship between the parties and not solely to the parties' legal rights."[13]

Even when the status quo appears to need preserving, "[a] preliminary injunction is an extraordinary remedy that may only be awarded upon a clear showing that the movant is entitled to such relief."[14]  Rambling, vague, or conclusory arguments are insufficient to make this showing.[15]  The legal standard for a preliminary injunction is well-established.

> Under Rule 65 of the Federal Rules of Civil Procedure, a party seeking a preliminary injunction must show: (1) the movant is substantially likely to succeed on the merits; (2) the movant will suffer irreparable injury if the injunction is denied; (3) the movant's threatened injury outweighs the injury the opposing party will suffer under the injunction; and (4) the injunction would not be adverse to the public interest.[16]

Defendants seek very specific, limited relief—Jones removed from his position as International President.  Instead of preserving the status quo, this relief would require the nonmoving party to take affirmative action, i.e., Jones stepping down as President.  Thus, the Court

---

[10] *Byrnes v. Johnson Cnty. Cmty. Coll.*, 2011 WL 166715, at *2 (D. Kan. 2011) (citing *Tri-State Generation & Transmission Ass'n, Inc. v. Shoshone River Power, Inc.*, 805 F.2d 351, 355 (10th Cir. 1986)).

[11] *Schrier*, 427 F.3d at 1260 (quoting *Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*, 269 F.3d 1149, 1155 (10th Cir. 2001) (further citation omitted)).

[12] *Id.* (quoting 11A Charles Alan Wright et al., *Federal Practice and Procedure* § 2948, at 136 (2d ed.1995)).

[13] *Id.* (further citation and quotations omitted).

[14] *N.M. Dep't of Game & Fish v. U. S. Dep't of the Interior*, 854 F.3d 1236, 1245 (10th Cir. 2017) (quotations, alterations, and citations omitted).

[15] *Andrews v. Andrews*, 160 F. App'x 798, 799 (10th Cir. 2005).

[16] *First W. Capital Mgmt. Co. v. Malamed*, 874 F.3d 1136, 1141 (10th Cir. 2017) (quotation omitted).

-8-

construes Defendants' Motion as requesting a mandatory injunction. A mandatory injunction is "an injunction that requires the nonmoving party to take affirmative action . . . before a trial on the merits occurs."[17] Mandatory injunctions are considered "disfavored" injunctions by courts due to the extraordinary relief they provide, especially when compared to the standard—yet already exceptional—preliminary injunction.[18] When seeking a disfavored injunction, the movant has a heightened burden to show that the exigencies of the case support granting the motion.[19]

Accordingly, Defendants must meet the higher burden accompanying this unfavored type of preliminary injunction. Keeping this higher standard in mind, the Court will address each of the four factors relevant to granting preliminary injunctions.

## III.    Analysis

### A.    Likelihood of success on the merits

The first factor the Court must evaluate is whether Defendants can show a likelihood of success on the merits. Defendants base their present Motion on their first counterclaim under 29 U.S.C. § 185 that Jones is violating the IBB Constitution. Thus, to meet this factor, Defendants must show a likelihood of success of this claim.

Neither party disputes the relevant legal standards for the Court's enforcing the IEC's interpretation of IBB's Constitution. Instead, the question is which parties' interpretation of the IBB Constitution is correct. Therefore, at its core, Defendants' potential success boils down to

---

[17] *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1208 (10th Cir. 2009); *see also Schrier*, 427 F.3d at 1261 (holding that a mandatory injunction "places the issuing court in a position where it may have to provide ongoing supervision to assure the nonmovant is abiding by the injunction.") (quotation marks, citations, alterations omitted).

[18] *See id.*; see also *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973 (10th Cir. 2004*), aff'd and remanded sub nom. Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418 (2006) (holding a disfavored injunction is "a remedy that is extraordinary even in the normal course").

[19] *Schrier*, 427 F.3d at 1262 (further citation omitted).

interpreting the provisions of the IBB Constitution to determine which parties have acted according to its provisions and which are in breach.

Here, the starting point for interpreting the IBB Constitution is Article 17.3.2, which provides:

> The Executive Council shall have exclusive jurisdiction to hear charges against subordinate bodies and International Officers. Any member of the Executive Council who is directly involved in the proceedings so that the Council member cannot function in an impartial manner shall not participate in the proceedings or be subject to challenge.

On its face, this provision required the IEC to be the body investigating and hearing the charges brought against Jones. And yet, it also prevented Jones from participating in any of the proceedings to assess the charges against him. Thus, his appointment of the Article 17 committee clearly was in violation of this provision. However, that fact alone does not mean that Defendants properly followed the IBB Constitution.

As determined at the July 27 hearing, the true issue is whether the IVPs had the authority under the IBB Constitution to remove Jones from office. No one disputes that the IEC alone is invested with this authority, but rather whether Defendants constitute the IEC under the IBB Constitution. Meetings of the IEC are governed by Article 5.8. This article states:

> The Executive Council [or IEC] shall meet on call of the International President as conditions warrant, but shall meet at least semi-annually, and shall meet immediately preceding and following each Convention. Its decisions shall be governed by majority vote. A majority of the Council shall constitute a quorum.

Jones (joined by Creeden) argues that Article 5.8 disallows the meeting of the IEC unless the International President calls it. This interpretation does not reflect the plain language of this provision. Instead, the phrase "shall meet on call of the International President" places a *requirement* on the IEC's meeting, not a *restriction*. Nothing prevents the IEC from meeting even

-10-

if the International President is not the one to assemble them.  But if he does call a meeting when conditions warrant, the IEC must convene.

Next, Jones argues that at the May 30 hearing there was not a proper quorum of the IEC present such that its actions had a binding effect under the IBB Constitution.  The IEC has six members—the International President and the five IVPs.  Thus, to meet in its official capacity, four of the IEC members—a majority of the six-member IEC—must be present to constitute the requisite quorum.[20]

Here, four members of the IEC were present at the May 30 hearing: Baca, Simmons, Stadnick, and Fultz.  However, Fultz, as the person presenting charges against Jones, recused himself from voting on whether to remove Jones from the International President position.  Jones argues that this recusal made Fultz ineligible to help reach the necessary quorum.   The Court disagrees.  Fultz's recusal does not eliminate his presence.  After all, the only requirement to form a quorum is that a majority of the IEC be present, not that they participate.  Thus, the Court concludes that a quorum was present at the May 30 hearing.

The trickier question is whether the decision reached by only three of the IEC members is binding under the IBB Constitution.  Article 5.8 is unclear on this point, only stating "[i]ts decisions shall be governed by majority vote."  Two possible interpretations come to mind: (1) once the IEC has a quorum, a majority of those present is all that is necessary to reach a binding decision or (2) "majority vote" in Article 5.8 refers to a majority of the IEC itself, the same majority required to reach a quorum.  Obviously, Defendants argue for the first interpretation—Jones for the second.   This is pertinent because only three of the IEC members actually voted to remove

---

[20] *See New Process Steel, L.P. v. N.L.R.B.*, 560 U.S. 674, 683–84 (2010) ("A quorum is the number of members of a larger body that must participate for the valid transaction of business.") (citing Black's Law Dictionary 1370 (9th ed. 2009)).

Jones from office.  Three out of six is not a majority.  Thus, under Jones' interpretation, the IVPs' decision was not binding under Article 5.8.  Conversely, if all Article 5.8 requires for a binding decision is the majority of IEC members actually present after a quorum is established, then the IVPs' decision rendered by three out of four present members is binding.

The Court concludes that Defendants' interpretation is correct for two reasons.  First, requiring only a majority of those present after a quorum is established tends to be the ordinary practice for governing bodies.  Although Article 5.8 is somewhat vague and ambiguous, it does not explicitly require the opposite.  Second, if a majority of the IEC as a whole were required to reach any binding decision, then the quorum requirement would be rendered obsolete.  Thus, the Court concludes that Article 5.8 requires only a majority vote from IEC members present once a quorum has been established.

Under this interpretation, the May 30 vote to remove Jones as International President is binding.  As noted, a quorum was established by the presence of four IEC members.  Three of those four, i.e., a majority, voted to remove Jones from office.  Thus, under the IBB Constitution, Defendants successfully and lawfully removed Jones from his position as International President.

Because Defendants' decision was binding, Jones' refusal to step down as International President means that he is presently violating the IBB Constitution's provisions.  Any actions taken by Jones as International President after June 2, 2023, are unlawful and in breach.  Accordingly, Defendants have shown a likelihood of success on their claim under 29 U.S.C. § 185 for Jones' violation of the IBB Constitution.  This first factor favors granting Defendants' Motion.

## B.      Irreparable harm

The most important prerequisite for a preliminary injunction is whether the movant can prove irreparable harm.[21]  "To constitute irreparable harm, an injury must be certain, great, actual and not theoretical."[22]  It must also be imminent.[23]  Furthermore, "merely serious or substantial" harm does not suffice.[24]  The key word here is irreparable—if an injury can be redressed or undone, then the injury is not irreparable.[25]  For example, economic loss is not irreparable because such losses may be addressed by monetary damages.[26]

At the July 27 hearing, the Court directed Defendants to explain what irreparable harm would result from allowing Jones to remain in office.  In response, Defendants vaguely claimed that there is confusion and "chaos" within the IBB at the moment due to the lack of confusion on who is in charge.  However, Defendants declined to put on *any* evidence of the ongoing "chaos," much less evidence of how it would result in irreparable harm.  Although Defendants' counsel alleged that the chaos at the IBB injures its relations with employers, he failed to present any evidence on that subject.  Likewise, Defendant's counsel claimed that there was confusion over whether an "ISO conference" will take place without explaining how that will injure Defendants, much less putting forth evidence of the same.  Defendants' unsupported allegations are vague, conclusory, and wholly incapable of meeting their burden under this factor.  This is especially true

---

[21] *Hill's Pet Nutrition, Inc. v. Nutro Prod., Inc.*, 258 F. Supp. 2d 1197, 1205 (D. Kan. 2003).

[22] *Schrier*, 427 F.3d at 1267.

[23] *Id.*

[24] *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1250 (10th Cir. 2001).

[25] *See Salt Lake Tribune Publ'g Co. v. AT & T Corp.*, 320 F.3d 1081, 1105 (10th Cir. 2003) ("Irreparable harm, as the name suggests, is harm that cannot be undone.").

[26] *See Schrier*, 427 F.3d at 1267.

-13-

given that Defendants seek a mandatory injunction against Jones, placing on them an even higher burden.

While the "chaos" alleged by Defendants' counsel may be serious and substantial, the Court cannot find that Defendants have met their burden in showing that it even exists, much less that it is irreparable.  In fact, the Court finds any harm alleged by Defendants may well be reparable.  Money damages are available against Jones for expenses wrongfully billed to the IBB or salaries wrongfully paid to Kateryna.  Confusion may be disheartening for those experiencing it, but that confusion will be resolved upon resolution of this case.

Furthermore, the Court's prior order on June 22 specifically addressed all the issues that the parties believed necessary to preserve the status quo and prevent irreparable harm at that time. In fact, the parties agreed that the Court's prior order restored the status quo as it existed prior to the parties' current dispute—albeit with a tighter rein on Jones' spending.  Accordingly, the Court finds that Defendants have failed to meet their burden under this factor.

## C.       Weighing injuries

The analysis under the weighing injuries factor is simple, if only because Defendants have not shown that they will suffer any injury should their Motion be denied.  The chaos their counsel fears applies mostly to the IBB as a whole.  While this chaos may cause some anxiety or stress to Defendants as leaders of the IBB, the Court does not find such injury significant, especially considering Defendants' dearth of evidence on the subject.  In contrast, it is obvious that— deserved or not—Jones would suffer substantial legal injury if stripped of his duties, his salary, and his position within the IBB.[27]  Once again, the Court considers its prior injunction sufficient

---

[27] The Court recognizes that this factor has become moot as of July 31, 2023, due to Jones' resignation, but the Court must still analyze the preliminary injunction factors in the context of Defendants' Motion.

to allay any potential injury to Defendants until a decision may be reached on the merits. Therefore, the Court finds that Jones' injury under Defendants' requested preliminary injunction outweighs any speculative harm threatening Defendants pending the outcome of this case. Accordingly, this factor does not favor granting Defendants' Motion.

**D.      Public interest**

The final factor requires courts to examine whether the requested relief would be adverse to any applicable public interests.[28]   Here, there are at least three public interests involved: (1) sustaining a labor union's freedom from interference regarding its internal affairs; (2) protecting "fundamental rights of individual labor union members as set forth in the LMRDA;"[29] and (3) respecting a labor union's democracy.[30]

The first public interest is inapplicable to this case, as interference with IBB's internal affairs is necessary due to its leadership's split over who controls those affairs.  The second looks to the right of IBB members to not have their leadership abuse its power.  Given the currently undisputed evidence of Jones' extravagant misuse of IBB funds, the Court does not consider Defendant's requested injunction adverse to the rights of IBB's members.  The third public interest, however, stands against granting that relief as Jones is a democratically elected official. While this Court may have to order his removal if Defendants win on the merits, granting an injunction now would be adverse to the public interest in IBB's right to elect its own International President free from the judiciary's interference.  Therefore, this factor does not favor granting a preliminary injunction.

---

[28] *First W. Cap. Mgmt.*, 874 F.3d at 1141.

[29] *Babler v. Futhey*, 618 F.3d 514, 524 (6th Cir. 2010).

[30] *See Loc. No. 82, Furniture & Piano Moving, Furniture Store Drivers, Helpers, Warehousemen & Packers v. Crowley*, 467 U.S. 526, 533 n.7 (1984).

## IV.    Conclusion

By requesting a preliminary injunction, Defendants asked for extraordinary relief.  In doing so, they placed on themselves a high burden, higher still because they sought not to preserve the status quo prior to the parties' dispute but to affirmatively remove Jones from office.

Defendants have not met their burden.  Although Defendants have shown a likelihood of success of the merits, that is not the most important factor for a mandatory injunction's "extraordinary relief."  Irreparable harm is.  Based on the vague aallegations of "chaos" and other unspecified, conclusory harms alleged by Defendants' counsel, the Court cannot find that Defendants will suffer irreparable harm.

Which brings us to the present state of affairs.  The Court learned only this morning that Jones has resigned as International President.  However, as a part of his resignation he has unilaterally named a successor International President—Cory Channon—"for the balance of my elected term of office."  This action is highly suspect, notwithstanding the reference in Jones' announcement to his authority under Article 7.1.1.  Although the Court has determined that the heightened standards for issuing an injunction are not met here, that does not mean that the June 2, 2023, action of the IEP removing Jones from office will not be ultimately validated upon a legal ruling with a lower standard (such as a motion for summary judgment).  If so, then any action of Jones naming a successor would be ultra vires, without regard to whether his referenced authority would have allowed him to take such action.[31]

Further, his action is against the tenor of the Court's earlier injunction "to essentially 'freeze' the situation until proper resolution of the parties' claims."  Likewise, Jones' payment of

---

[31] While perhaps irrelevant, the Court also notes that Jones' action stands in stark contrast to Article 4.5 of the IBB Constitution which explicitly imbues the IEC with the authority to fill a vacancy in the International President position.

over a half million dollars of allegedly unused vacation time to himself, his wife, and Secretary Treasurer William Creeden (who is aligned with Jones in this dispute) is also of questionable validity and in violation of the Court's injunction.

Defendants/Counter-Plaintiffs have filed a Notice of these developments (Doc. 85), in which they request that their Motion for Preliminary Injunction be converted to a Motion for Summary Judgment.  This process is unworkable, not only because different elements apply to such a motion—elements which have not been briefed nor responded to—but also because different issues have now arisen; principally payment of allegedly unused vacation time, appointment of an interim International President.

However, the parties have demonstrated an unusual capacity for mischief, leading the Court to determine that time is of the essence.  Therefore, the Court directs parties who wish to do so to file any motions for summary judgment by 4:00 p.m., August 7.  Responses shall be filed by 9:00 a.m., August 14.  No replies will be permitted.  A hearing on any such motions will be set for Tuesday, August 15 at 1:00 p.m. in the Kansas City, Kansas Courthouse (courtroom to be determined later).

**IT IS THEREFORE ORDERED** that Defendants' Motion for a Preliminary Injunction (Doc. 33) is **DENIED.**

**IT IS FURTHER ORDERED** that the Court adopts in whole all preliminary injunctions contained in its order on June 22, 2023.

**IT IS FURTHER ORDERED** that any parties wishing to file motions for summary judgment shall do so by 4:00pm, August 7.  Responses shall be filed by 9:00am, August 14.  No replies will be permitted.

    **IT IS FURTHER ORDERED** that a hearing be scheduled on such motions for summary judgment, should any be filed on August 15 at 1:00 p.m. in the Kansas City, Kansas Courthouse.

    **IT IS SO ORDERED.**

Dated this 1st day of August, 2023.

ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE