# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

INTERNATIONAL BROTHERHOOD
OF BOILERMAKERS, IRON SHIP
BUILDERS, BLACKSMITHS, FORGERS
AND HELPERS, AFL-CIO,

     *Plaintiff,*

vs.

                                   Case No. 23-2250-EFM-TJJ

J. TOM BACA (officer capacity),
TIMOTHY SIMMONS (officer capacity),
ARNIE STADNICK (officer capacity),

     *Defendants.*

AND

J. TOM BACA (officer capacity),
TIMOTHY SIMMONS (officer capacity),
ARNIE STADNICK (officer capacity),
JOHN T. FULTZ (officer capacity),

     *Counter/Third-Party Plaintiffs,*

vs.

INTERNATIONAL BROTHERHOOD
OF BOILERMAKERS, IRON SHIP
BUILDERS, BLACKSMITHS, FORGERS
AND HELPERS, AFL-CIO, NEWTON B.
JONES, KATERYNA JONES, and
WILLIAM B. CREEDEN,

     *Counter/Third-Party Defendants.*

## MEMORANDUM AND ORDER

Before the Court is a Motion for Partial Summary Judgment by Defendants/Third-Party Plaintiffs J. Tom Baca, Timothy Simmons, Arnie Stadnick, and John T. Fultz (Doc. 95).[1]  In their Motion, Defendants seek declaratory judgment on Count 1 of their Counterclaims, asking the Court to uphold their decision on June 2, 2023, to remove Newton B. Jones from his position as International President of the International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers, and Helpers ("IBB").  The Court, having considered the arguments and evidence advanced by the parties both in writing and in person, granted that Motion on August 15, 2023.  This Memorandum and Order memorializes the Court's ruling.

### I.        Factual and Procedural Background[2]

IBB is a union with roughly 50,000 members throughout the United States and Canada. IBB's Executive Council ("IEC") consists of International President Newton Jones and the five International Vice-Presidents: Baca, Simmons, Stadnick, Fultz, and Lawrence J. McManamon (collectively the "IVPs"). The International President and IVPs are union elected officers.  This case stems from Jones' alleged misuse of union funds.

Fultz initially brought charges against Jones in an email on April 14, 2023, claiming that Jones had funneled hundreds of thousands of dollars to his Ukrainian wife, Kateryna Jones, for work she never performed, including back pay.  Fultz also alleged that Jones had used his IBB credit card to cover tens of thousands of dollars in private dining for himself and Kateryna, as well as paying for flights to Ukraine to visit her.  Upon hearing these allegations, Jones announced that

---

[1] As noted by the Court in its July 27, 2023, hearing, the parties will recaption the case to accurately reflect the interested parties and their relative positions.

[2] The facts are those undisputed by the parties and supported by the record.

he had created a committee—dubbed the Article 17 committee by IBB's counsel—to investigate the charges against him and appointed certain members to that committee.  One of those members was William Creeden, IBB's Secretary Treasurer, who had authorized the payments to Jones' wife. Jones relied on Article 17.2.2 of the IBB Constitution which requires the International President to establish a hearing date when charges are brought against an IBB member.

The IVPs[3] claimed that Jones' appointed committee was illegitimate under Article 17.3.2. This provision states:

> The Executive Council shall have exclusive jurisdiction to hear charges against subordinate bodies and International Officers.  Any member of the Executive Council who is directly involved in the proceedings so that the Council member cannot function in an impartial manner shall not participate in the proceedings or be subject to challenge.

Because Article 17.3.2 precluded Jones' involvement in proceedings brought pursuant to charges against him, the IVPs interpreted this provision as creating a very limited vacancy in the International President position.  To be clear, the office of International President was not itself vacant.  Rather, Jones could not perform certain duties inherent in the office, such as setting a hearing date or appointing a committee to hear the charges.  Acting under Article 4.5, which allows the IEC to fill the International Prescient office when vacant, the IVPs appointed a third party, Robert Lungsford, to perform the duties of the International President solely in regard to the procedure for hearing charges against Jones.

On May 11, Creeden sent a letter and email to Fultz offering to let him and the other IVPs review IBB records to assess the accuracy of the charges against Jones.  At no time did Jones request more information or ask for greater specificity in the charges against him.

---

[3] From here on, this Order's references to the "IVPs" do not include McManamon.

On May 16, Lungsford sent an email to the IVPs and to an email address that in Lungsford's contacts was labeled "IBB-IP."[4]  This email contained notice of the hearing to process the charges against Jones, which would take place May 30, 2023, at 8:00 a.m. at Hilton Garden Inn Kansas City Airport.  Simmons' affidavit states that this email provided notice to Jones of the hearing in accordance with Article 17.2.2 of the IBB Constitution.  Article 17.2.2 states the IEC "shall give the accused at least fifteen (15) days notice of the time and place of a hearing on such charge at which such accused shall appear and defend."

On May 26, Creeden again emailed the IVPs and Jones purportedly on behalf of the Article 17 Committee.  Therein, Creeden referenced the scheduled May 30 hearing, claiming it was unauthorized.  He did not purport to represent Jones in this email.

On May 30, Lungsford convened the hearing to address the charges against Jones. Lungsford selected Joseph Maloney to serve as the Hearing Officer.  Baca, Simmons, and Stadnick acted as the tribunal, with Fultz presenting evidence against Jones.  McManamon did not attend. Jones was likewise absent.  However, two other IBB members attended, Kyle Evenson and Dan McWhorter.  Although Evenson identified himself as an "observer," he went on to state that he was not only an observer, implying that he was also present in his capacity as an IBB member. Evenson's conduct during the hearing, such as requesting to view Fultz's evidence, suggests that he meant to protect Jones' interest.  Still, when explicitly asked whether he had been assigned to the hearing, Evenson answered, "It doesn't matter."  Hearing Officer Maloney concluded that Evenson and McWhorter were present merely as observers, and thus denied Evenson's request to review the evidence.

---

[4] A May 19 email attached to the First Amended Complaint clarifies that "IBB-IP" refers to an "ibb-ip@boilermakers.org" email address. *See* Doc. 4-10.

Fultz proceeded to present documents showing that Jones' IBB credit card had been used to purchase private meals near Jones' home in North Carolina. He also showed documents detailing the backpay to Kateryna and Jones' trips to Ukraine.[5] Baca, Simmons, and Stadnick, purportedly acting for the Executive Council, voted to remove Jones from his office of International President, Fultz having recused himself from the vote because he acted as prosecutor. These three IVPs issued a written decision on June 2, 2023, finding Jones guilty of violation of the IBB's Constitution, removing him from the office of President, and stripping him of his IBB membership.

Jones decried the legitimacy of this proceeding, refused to step down as International President, and began a pattern of retaliation against the IVPs who partook in the hearing by declaring them removed from committee and trustee appointments. He also brought internal charges against Baca, Simmons, Stadnick, and Fultz, alleging that they violated the IBB's Constitution. Masquerading as the IBB itself, Jones initiated this present action against Baca, Simmons, and Stadnick. Acting purportedly as the IBB, Jones sought injunctive relief nullifying the June 2 decision and prohibiting further action against him as IBB President, filing a motion for a preliminary injunction requesting the same.[6]

In response, Baca, Simmons, and Stadnick, now joined by Fultz, asserted counterclaims against Jones, Kateryna, and Creeden for breach of the IBB Constitution under 29 U.S.C. § 185, retaliation under 29 U.S.C. § 411(a)(2), and breach of fiduciary duty under 29 U.S.C. § 501(a). Simultaneously, Defendants filed a motion for a temporary restraining order or preliminary

---

[5] All of the documents relied upon by Fultz were attached to the First Amended Complaint by Plaintiff IBB.

[6] As later determined by the Court, IBB's counsel represented Jones' interest at this point in the litigation instead of IBB's.

injunction.  This Motion purportedly sought the "limited relief" of having Jones removed from office pending the resolution of this case.

On June 20, 2023, the Court held a hearing to decide the competing motions.  Jones did not attend.  At the hearing, the Court determined from the facts of the case that the central issue presented was who controlled IBB—Jones or the Executive Council.  The Court noted that IBB itself could not take a side in a suit to determine who controlled it.  Therefore, for IBB's counsel, who represented to the Court that he represented IBB and *not* Jones, to advocate for Jones' side of the conflict would be a conflict of interest.[7]  Accordingly, the Court concluded that IBB's counsel could still represent IBB's interests at the hearing, but they could not argue for Jones' interpretation of the IBB Constitution.  Because Jones had failed to hire any counsel to represent himself and he failed to appear in person, Jones was unrepresented at the hearing.

Given that there was no one to argue on Jones' behalf, IBB's counsel moved to continue the hearing until Jones could obtain counsel.  The Court granted the motion.  In the meantime, the Court noted that it still had to address the emergency nature of the case and asked the parties for recommendations.  The parties agreed that it would be best to preserve the status quo pre-May 30, 2023, until the Court could rule on the pending issues in this case.  They also agreed that certain restrictions on Jones' presidential powers would be suitable to prevent him from potentially abusing his position.  Therefore, the Court issued an interim preliminary injunction preventing Jones from—among other things—traveling or otherwise using his credit cards without approval from the IVPs.  The Court restated these interim preliminary injunctions in a written order issued June 22, 2023.

---

[7] The Defendants never raised this issue in any of their briefing, leaving it for the Court to address *sua sponte* at the hearing.

Soon after, Jones, Kateryna, and Creeden all appeared via newly acquired counsel and filed answers to Defendants' counterclaims. Jones, however, did not submit any motion for an injunction against Defendants, nor did he adopt IBB's prior motion. Furthermore, Jones did not respond to Defendants' motion at that time. Defendants then filed a "Notice of Failure to File Opposition" in which they noted that no opposition to their motion for injunction had been filed and claimed that Creeden, Jones, and Kateryna had paid themselves over half a million dollars in unused vacation time since the June 20 hearing.

On July 27, 2023, this Court held a follow-up hearing to address Defendants' motion for a preliminary injunction.[8] All parties were present and represented. None of the parties put on any evidence, relying instead on the affidavits and exhibits already filed as attachments to the parties' pleadings and motions. After much debate over the proper interpretation of the IBB's Constitution, the Court asked the parties to address the relevant legal standards for a preliminary injunction. Given this Court's interim preliminary injunction preserving the pre-May 30 status quo, the Court directed the parties to specifically address what irreparable harm would result from the failure to remove Jones as International President.

After the close of arguments, the Court informed the parties it would issue its ruling as a written order instead of from the bench. It issued that order on August 1, but not before Jones announced on July 31 that he had decided to retire. In a largely self-congratulatory letter addressed to "All Principal Lodge Officers," Jones declared that he had selected Cory R. Channon as his replacement. Channon sent out his own letter later that day, thanking Jones for the appointment.

---

[8] Because the Court determined that IBB could not advocate on Jones' behalf and because Jones never adopted nor filed his own motion for a preliminary injunction, the Court determined that the only Motion before it was Defendants'.

In its August 1 order, the Court analyzed the factors relevant to granting a preliminary injunction, ultimately concluding that Defendants failed to show irreparable harm.  Thus, the Court denied Defendant's motion, while ordering expedited deadlines for this case.  Specifically, the Court ordered that any motions for summary judgment be filed by August 7, with responses due on August 14.  No replies would be allowed.  Instead, the Court scheduled a hearing on August 15 to allow the parties to present evidence and argue any motions filed.

On August 7, Defendants filed the present Partial Motion for Summary Judgment (Doc. 95).  In this Motion, Defendants request that the Court enter declaratory judgment on their Count I against Jones, thereby affirming the IVPs' decision to remove Jones as IBB President on May 30.  Shortly after filing their Motion, Defendants and stipulated with Creeden to dismiss him from Count I.  Jones filed a brief Response on August 11.  The hearing to decide Defendants' Motion took place as scheduled.

At the hearing, the primary issues discussed were whether Jones had sufficient notice and whether Evenson and McWhorter were observers or Jones' representatives.  However, neither party put on evidence, relying instead on documents already filed in this case and factually unsupported allegations by the attorneys.  For reasons detailed below, the Court issued its ruling from the bench.  The Court granted Defendants' Motion, thereby entering declaratory judgment that the IEC's decision on June 2, 2023, is binding and entitled to full effect.

## II.     Legal Standard

### A.     Summary judgment

Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law.[9]  A fact is "material" when it is essential to the claim, and issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor.[10]  The movant bears the initial burden of proof and must show the lack of evidence on an essential element of the claim.[11]  The nonmovant must then bring forth specific facts showing a genuine issue for trial.[12] These facts must be clearly identified through affidavits, deposition transcripts, or incorporated exhibits—conclusory allegations alone cannot survive a motion for summary judgment.[13]  The court views all evidence and reasonable inferences in the light most favorable to the non-moving party.[14]

### B.     Declaratory judgment

The Declaratory Judgment Act states, "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration."[15]

---

[9] Fed. R. Civ. P. 56(a).

[10] *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006) (citing *Bennett v. Quark, Inc.*, 258 F.3d 1220, 1224 (10th Cir. 2001)).

[11] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

[12] *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005) (citation omitted).

[13] *Mitchell v. City of Moore*, 218 F.3d 1190, 1197 (10th Cir. 2000) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670–71 (10th Cir. 1998)).

[14] *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004) (citation omitted).

[15] 28 U.S.C. § 2201(a).

"While this statute vests the federal courts with power and competence to issue a declaration of rights, the question of whether this power should be exercised in a particular case is vested in the sound discretion of the district courts."[16]

In determining whether declaratory judgment is appropriate, the Tenth Circuit has laid out five factors for courts to consider. These are:

> [1] whether a declaratory action would settle the controversy; [2] whether it would serve a useful purpose in clarifying the legal relations at issue; [3] whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race to *res judicata*"; [4] whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and [5] whether there is an alternative remedy which is better or more effective.[17]

When reviewing a district court's decision on whether to hear an action brought under the Declaratory Judgment Act, the Tenth Circuit "will not engage in a de novo review of all the various fact-intensive and highly discretionary factors involved."[18] Rather, "it will only ask whether the trial court's assessment of them was so unsatisfactory as to amount to an abuse of discretion."[19]

## III.    Analysis

Defendants seek declaratory judgment against Jones on their claim under Section 301(a) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a). Section 301(a) authorizes federal courts to hear "[s]uits for violation of contracts between an employer and a labor organization . . . or between any such labor organization."[20] It is under this provision that

---

[16] *St. Paul Fire & Marine Ins. Co. v. Runyon*, 53 F.3d 1167, 1169 (10th Cir. 1995) (internal citations omitted).

[17] *State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 983 (10th Cir. 1994) (quoting *Allstate Ins. Co. v. Green*, 825 F.2d 1061, 1063 (6th Cir. 1987)).

[18] *Id.*

[19] *Id.*

[20] *See also Woodell v. Int'l Brotherhood of Elec. Workers, Loc. 71*, 502 U.S. 93, 98 (1991) (holding "the word 'between' in § 301 refers to 'contracts,' not 'suits'" and concluding that "Congress would not likely have used the unqualified term 'contract' without intending to encompass union constitutions").

Defendants seek to hold Jones accountable for the alleged violations of the IBB Constitution—namely, the defying its June 2, 2023, decision.

## A.    Declaratory judgment is appropriate in this case.

Before turning the merits of Defendants Motion, the Court must determine whether declaratory judgment is appropriate in this case. An analysis of the relevant factors reveals that it is. First, there is no dispute that the main controversy here is whether the IEC's decision to remove Jones was valid. Declaratory judgment would settle the issue. Second, declaratory judgment would clarify the legal relations of the parties by determining which parties control the IBB and whether Jones still possesses the office of International President. Third, declaratory judgment here would not lend itself to "procedural fencing." Fourth, there is no danger that declaratory judgment in this case would create friction between federal and state courts. And finally, there does not appear to be a better remedy available to the parties. Thus, each factor favors allowing the Court in its discretion to enter declaratory judgment in this case.

## B.    The Court owes deference to the IEC's decision on June 2, 2023, because it constitutes the IBB's governing body.

In addressing union decisions, courts must be wary. The Tenth Circuit has even admonished that "judicial interference in intra-union affairs should be undertaken with great reluctance" due to "a strong federal policy in favor of union self-governance."[21] Thus, "[a]bsent bad faith or special circumstances, an interpretation of a union constitution by union officials . . . should not be disturbed by the court."[22] Bad faith or special circumstances may exist

---

[21] *James v. Int'l Brotherhood of Locomotive Eng'rs*, 302 F.3d 1139, 1145 (10th Cir. 2002) (further citations omitted).

[22] *Id.* (further citation and quotations omitted).

when union officials fail to give a member accused of wrongdoing a "full and fair hearing."[23]  The "proper standard of judicial review" of this provision is whether "the charging party [provided] some evidence at the disciplinary hearing to support the charges made."[24]  Any stricter standard "would be inconsistent with the apparent congressional intent to allow unions to govern their own affairs, and would require courts to judge the credibility of witnesses on the basis of what would be at best a cold record."[25]

The Court will begin by restating its interpretational analysis of the IBB Constitution.  In sum, a reasonable interpretation of the IBB Constitution requires finding that Defendants properly comprised the IEC on May 30.[26]  Thus, they were the proper representatives of the IBB at that time.

To reach this conclusion, the starting point for interpreting the IBB Constitution is Article 17.3.2, which provides:

> The Executive Council shall have exclusive jurisdiction to hear charges against subordinate bodies and International Officers.  Any member of the Executive Council who is directly involved in the proceedings so that the Council member cannot function in an impartial manner shall not participate in the proceedings or be subject to challenge.

On its face, this provision required the IEC to be the body investigating and hearing the charges brought against Jones.  And yet, it also prevented Jones from participating in any of the proceedings to assess the charges against him.  Thus, his appointment of the Article 17 committee clearly was in violation of this provision.

---

[23] 29 U.S.C. § 411(a)(5).

[24] *Int'l Brotherhood of Boilermakers, Iron Shipbuilders, Blacksmiths, Forgers & Helpers, AFL-CIO v. Hardeman*, 401 U.S. 233, 246 (1971).

[25] *Id.*

[26] *See* Doc. 86.

The next logical step is determining whether the IVPs had the authority under the IBB Constitution to remove Jones from office. No party disputes that the IEC alone is invested with this authority, but rather whether Defendants constitute the IEC under the IBB Constitution. Meetings of the IEC are governed by Article 5.8. This article states:

> The Executive Council [or IEC] shall meet on call of the International President as conditions warrant, but shall meet at least semi-annually, and shall meet immediately preceding and following each Convention. Its decisions shall be governed by majority vote. A majority of the Council shall constitute a quorum.

Jones argues that Article 5.8 disallows the meeting of the IEC unless the International President calls it. This interpretation does not reflect the plain language of this provision. Instead, the phrase "shall meet on call of the International President" places a *requirement* on the IEC's meeting, not a *restriction*. Nothing prevents the IEC from meeting even if the International President is not the one to assemble them. But if he does call a meeting when conditions warrant, the IEC must convene.

Next, Jones argues that at the May 30 hearing there was not a proper quorum of the IEC present such that its actions had a binding effect under the IBB Constitution. The IEC has six members—the International President and the five IVPs. Thus, to meet in its official capacity, four of the IEC members—a majority of the six-member IEC—must be present to constitute the requisite quorum.[27]

Here, four members of the IEC were present at the May 30 hearing: Baca, Simmons, Stadnick, and Fultz. However, Fultz, as the person presenting charges against Jones, recused himself from voting on whether to remove Jones from the International President position. Jones

---

[27] *See New Process Steel, L.P. v. N.L.R.B.*, 560 U.S. 674, 683–84 (2010) ("A quorum is the number of members of a larger body that must participate for the valid transaction of business.") (citing Black's Law Dictionary 1370 (9th ed. 2009)).

argues that this recusal made Fultz ineligible to help reach the necessary quorum.   The Court disagrees.  Fultz's recusal does not eliminate his presence.  After all, the only requirement to form a quorum is that a majority of the IEC be present, not that they participate.   Thus, the Court concludes that a quorum was present at the May 30 hearing.

The more difficult question is whether the decision reached by only three of the IEC members is binding under the IBB Constitution.  Article 5.8 is unclear on this point, only stating "[i]ts decisions shall be governed by majority vote."  Two possible interpretations come to mind: (1) once the IEC has a quorum, a majority of those present is all that is necessary to reach a binding decision or (2) "majority vote" in Article 5.8 refers to a majority of the IEC itself, the same majority required to reach a quorum.  Defendants argue for the first interpretation—Jones for the second. This is pertinent because only three of the IEC members actually voted to remove Jones from office.  Three out of six is not a majority.  Thus, under Jones' interpretation, the IVPs' decision was not binding under Article 5.8.  Conversely, if all Article 5.8 requires for a binding decision is the majority of IEC members actually present after a quorum is established, then a decision rendered by three out of four present members is binding.

The Court concludes that Defendants' interpretation is correct for two reasons.  First, requiring only a majority of those present after a quorum is established tends to be the ordinary practice for governing bodies.  Although Article 5.8 is somewhat vague and ambiguous, it does not explicitly require the opposite.  Second, if a majority of the IEC were necessary to reach any binding decision, then the quorum requirement would be rendered obsolete.  Thus, the Court concludes that Article 5.8 requires only a majority vote from IEC members present once a quorum has been established.

-14-

Under this interpretation, a quorum was established at the May 30 hearing by the presence of four IEC members.  Three of those four, i.e., a majority, voted to remove Jones from office. Acting in accordance with the IBB's Constitution, Defendants first voted then issued a written decision on June 2, 2023, removing Jones from office, taking away his membership in the IBB, and requiring him to repay any unlawful expenditures.

Because Defendants acted in accordance with the IBB Constitution, the Court's role is limited to examining whether their decision was supported by "some evidence."  It was.  Fultz presented his own testimony as to Jones' wrongdoing and provided roughly two hundred pages of receipts, billing statements, emails, and other evidence of Jones' action.  The Court has reviewed this evidence and is confident that it constitutes "some evidence" that Jones' expenditures violated the IBB Constitution.  Thus, to respect the congressional boundaries placed on judicial interference with union self-governance, the Court must find that Defendants' June 2 decision is binding— unless Jones can show bad faith or special circumstances requiring its reversal.

**C.      Jones fails to raise genuine issues of material fact as to bad faith or special circumstances.**

Jones wisely spends little time rearguing the interpretational issues.  Rather, Jones alleges bad faith and special circumstances as required under federal law for this Court to overturn the IBB's interpretation of its own Constitution.  Specifically, Jones claims that he was not afforded a full and fair hearing as required by 29 U.S.C. §411(a)(5) because his "representatives" were not allowed to review the evidence.  He also argues that notice in this case was inadequate under the IBB Constitution, which requires 15 days' notice prior to the May 30 hearing.  Given that this case is at summary judgment, Jones must point to facts in the record showing that there is a genuine issue of fact as to either of those issues.  This he has failed to do.

-15-

1.   *The observers at the May 30 hearing were not Jones' representatives.*

Jones' first objection is easily dealt with—Jones has failed to put on any evidence that he was not afforded a full and fair hearing.  Jones primarily argues that the hearing was improper because his "representatives" Evenson and McWhorter were not provided copies of the evidence presented.  In essence, he argues that denying them access to the evidence was equivalent to denying himself access even though he was the accused party.  Neither Evenson nor McWhorter, however, ever identified themselves as Jones' representatives.  Instead, Evenson responded that he was an observer and an IBB member.  When Hearing Officer Maloney specifically asked Evenson whether he had been assigned to the hearing, impliedly asking whether Jones had assigned him, he responded, "It doesn't matter."  Thus, Evenson refused to state that he represented Jones even when explicitly given the opportunity.  Hearing Officer Maloney concluded that Evenson and McWhorter were simply observers.  As observers, they were not entitled to review the evidence.

In arriving at this conclusion, the Court is conscious of its responsibility to stay out of union proceedings to the extent possible.  The question, therefore, is not whether the Court would have likewise concluded that Evenson and McWhorter did not represent Jones but whether some evidence supported Maloney's decision.  This standard is easily met here.  Thus, the Court concludes that Jones was unrepresented at the hearing.  Accordingly, he cannot claim that the failure to provide the evidence to mere observers somehow denied him a full and fair hearing.

2.   *Jones was not prejudiced by receiving notice only 14 days before the hearing.*

Jones' second objection—lack of notice regarding the May 30 hearing—seems at first brush a more difficult issue.  However, the Court is mindful of the procedural posture of this case.  At summary judgment, the Court is limited to considering evidence in the record in determining

whether genuine issues of material fact exist.  The only evidence that Jones received (or did not receive) notice is: (1) Simmons affidavit stating that Jones received notice on May 16 of the May 30 hearing; (2) a copy of the email from Lungsford to "IBB-IP" on May 16; and (3) Creeden's May 26 email copying Jones and referencing the May 30 hearing.

The only evidence before the Court, limited though it may be, supports a finding that Jones received 14 days' notice of the May 30 hearing.  Jones could have testified that he did not receive notice or even submitted an affidavit to that effect, but he did not.  Based on the record, the Court must conclude that there is no genuine issue of material fact as to whether Jones received notice of the hearing on May 16.

Given that unavoidable conclusion, the Court must address whether the notice of hearing provided to Jones was sufficient under the IBB Constitution.  Article 17.2.2 requires 15 days' notice of the time and place of the hearing be given to any person charged with wrongdoing under the IBB Constitution.  Despite lawyers' infamous distaste for mathematics, the Court is confident that the time between May 16 and May 30 is 14 days—not 15 as Defendants so ardently argue. This lack of timely notice fails to meet Article 17.2.2's standard.

On this issue, both parties heavily debate the decision in *Vars v. International Brotherhood of Boilermakers, Iron Shipbuilders, Blacksmiths, Forgers & Helpers*.[28]  There, the District Court of Connecticut analyzed the same IBB Constitution at issue here, including an identical 15 days' notice requirement.[29]  The plaintiff in *Vars* had received notice by certified mail only 14 days before the hearing.[30]  Briefly recognizing that the notice had been sent 17 days prior to the hearing,

---

[28] 215 F. Supp. 943, 947–48 (D. Conn.), *aff'd*, 320 F.2d 576 (2d Cir. 1963).

[29] *Id.* at 947

[30] *Id.*

the court emphasized, "[i]t is significant to note that at no time has the plaintiff claimed that the one-day variance in his receipt of the notice actually prejudiced the preparation of his defense."[31]

Like the court in *Vars*, the Court considers prejudice to be the most important factor in determining whether the 14-day notice, though facially deficient, actually harmed Jones. Jones, however, has offered no evidence of prejudice whatsoever. Jones does not dispute that he had notice of the charges against him on April 14 when Fultz emailed Jones stating the charges against him. Likewise, Jones does not dispute that he had notice of the May 30 hearing, arguing—albeit without evidentiary support—that he sent Evenson and McWhorter to represent himself at the hearing. His choice to not attend, to not instruct Evenson and McWhorter to inform the hearing officer they represented him, and to not present evidence was a gamble designed to undermine the legitimacy of Defendants' hearing. Jones cannot claim that he was prejudiced simply because he gambled and lost.

Briefly, Jones argues that the charge against him alleging that he used IBB funds to pay for private meals was unclear.[32] Ignoring for the moment that this argument is irrelevant to notice of the hearing, Jones does not articulate how indefinite charges prejudiced his defense. The proper response of anyone accused of indefinite misconduct would be to either request more specificity or ask for a continuance of the hearing date. Jones did neither. Indeed, Creeden—apparently acting on behalf of Jones' Article 17 Committee—offered to *provide* the IVPs with the records of Jones' purchases. He did not ask for the IVPs' evidence, and neither did Jones.

---

[31] *Id.* at 948.

[32] For his argument, Jones relies on Article 17.2.1, which requires that all charges be made with "sufficient definiteness."

In short, there is no evidence nor legal argument showing how Jones was prejudiced by receiving 14 days' instead of 15 days' notice of the May 30 hearing. Jones has not once claimed that he lacked knowledge of the hearing or needed more time to respond to the charges. Accordingly, this Court agrees with the reasoning of the *Vars* decision in holding that the May 30 hearing was not improper despite Defendants' failure to give Jones 15 days' notice. Jones has failed to show bad faith or special circumstances. Thus, the Court concludes that the IEC's written decision issued on June 2, 2023, is binding.

### IV.   Conclusion

The Court herein concludes that IEC's decision on June 2, 2023 removing Jones from office, stripping him of his IBB membership, and requiring him to reimburse the IBB for all improper expenditures was a valid exercise of its power under the IBB Constitution. Any actions Jones took after that date purportedly in his capacity as International President are invalid. Because this Order resolves Count I, the parties are directed to schedule a conference with the magistrate judge assigned to this case to determine what issues remain and how to proceed.

**IT IS THEREFORE ORDERED** that Defendants' Partial Motion for Summary Judgment (Doc. 95) is **GRANTED**.

**IT IS FURTHER DECLARED** that the IEC's June 2, 2023, decision was valid and binding.

**IT IS SO ORDERED.**

Dated this 18th day of August, 2023.

ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE